STATE of Missouri ex rel. William I. NOBLE, Relator,

v.

Honorable Charles V. BARKER, Judge of the Circuit Court of Webster County, Missouri, Respondent.

No. 14266.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 18, 1986.

Michael Lyons, Asst. Public Defender, Judicial Circuit 31, Springfield, for relator.

Donald G. Cheever, Pros. Atty., Webster County, Marshfield, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

CROW, Judge.

The issue in this original proceeding in prohibition is whether a "probation violation report" which triggers the issuance of a warrant for the arrest of a Missouri probationer constitutes an "untried indictment, information or complaint" within the meaning of Article III of the "Agreement on Detainers," § 217.490, RSMo Cum.Supp. 1982, thereby requiring that the probationer be given a hearing within 180 days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of his imprisonment in another state and his request for a final disposition of the violation report.

The only facts established by the record are those alleged by relator in his petition and admitted by respondent in his answer. From that source, we learn that on February 16, 1982, following a plea of guilty by relator to burglary in the second degree, the Circuit Court of Webster County, per § 557.011.2(3), RSMo 1978, suspended the imposition of sentence and placed relator on probation for three years. Thereafter, relator was convicted of felonies in Illinois, and sentenced to concurrent terms of imprisonment of seven years and three years for those felonies. Those sentences resulted in relator's incarceration by the Illinois Department of Corrections commencing March 3, 1982.

Some four months later, on July 20, 1982, a probation violation report was filed in the Circuit Court of Webster County, whereupon that Court issued a capias warrant for relator's arrest. The warrant was "lodged as a detainer" on relator while he was incarcerated in Illinois.

On April 23, 1984, relator filed in the Circuit Court of Webster County a "request for disposition of the warrant" under the "Interstate Agreement on Detainers." No action was taken by Webster County authorities regarding relator's request until February, 1985, when relator was returned to Webster County after being granted parole from the Illinois Department of Corrections.

On April 16, 1985, relator filed a "motion to dismiss" in the Circuit Court of Webster County. The motion has not been furnished us, but it is inferable that the motion sought a ruling barring the State from seeking a revocation of relator's probation for any violation alleged in the 1982 report. Relator's motion to dismiss was denied the same day it was filed, and respondent, the presiding judge of the Circuit Court of Webster County, "set this cause for further proceedings on May 21, 1985."

Relator promptly filed his petition for a writ of prohibition with us, seeking our order restraining respondent "from further proceedings on this cause."

In his petition, relator insisted that respondent was without jurisdiction to determine whether relator violated his probation as alleged in the 1982 violation report, in that "a warrant for violation of probation based on a suspended imposition of sentence is a detainer under Article III of the Interstate Agreement on Detainers." Consequently, said relator, Webster County authorities were obliged to obtain custody of him from the Illinois Department of Corrections, transport him to Webster County, and proceed to a final determination of the alleged violations of probation within 180 days after receiving his request for disposition. Inasmuch as Webster County authorities failed to do so, relator maintained that

respondent no longer had jurisdiction to decide whether relator violated his probation as alleged in the 1982 report.

We issued a preliminary order in prohibition, barring respondent from further action pending resolution of the jurisdictional issue and directing respondent to answer relator's petition by a specified date.

The prosecuting attorney of Webster County filed a timely answer on behalf of respondent, asserting that a probation violation report is not an untried indictment, information, or complaint within the meaning of § 217.490, RSMo Cum.Supp.1982, and that relator was consequently entitled to no relief.

Thereafter, in due time, relator filed a brief in support of his petition. The prosecuting attorney filed no brief.

The General Assembly of the State of Missouri enacted the "Agreement on Detainers" into law in 1971. Laws 1971, pp. 278–83. *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 355 (Mo. banc 1982). The Agreement is presently codified as §§ 217.-490–.520, RSMo Cum.Supp.1982. Article III of the Agreement appears in § 217.490, and provides, in pertinent part:

"1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state *any untried indictment, information or complaint* on the basis of which a *detainer* has been lodged against the prisoner, he shall be brought to *trial* within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the *indictment, information or complaint....*" (Emphasis added.)

Although the term "detainer" is nowhere defined in the Agreement, the Supreme Court of the United States noted in *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct.

1834, 1846, 56 L.Ed.2d 329, 346 (1978), that H.R.Rep. No. 91–1018, p. 2 (1970), and S.Rep. No. 91–1356, p. 2 (1970), U.S.Code Cong. & Admin.News 1970, p. 4865, define a detainer as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." The Supreme Court of Missouri took note of this definition in *Kemp*, 629 S.W.2d at 354, n. 2.

■ While the instant proceeding was pending before us, the Supreme Court of the United States decided *Carchman v. Nash*, 473 U.S. ——, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), explaining that the Interstate Agreement on Detainers is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. 473 U.S. at ——, 105 S.Ct. at 3403[1], 87 L.Ed.2d at 520. The Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const. art. I, § 10, cl. 3, and thus is a federal law subject to federal construction. 473 U.S. at ——, 105 S.Ct. at 3403[1], 87 L.Ed.2d at 520.

In *Carchman*, a New Jersey probationer was convicted of new crimes in Pennsylvania and imprisoned there. New Jersey authorities notified Pennsylvania authorities that the probationer had violated his New Jersey probation by committing the offenses in Pennsylvania, and a New Jersey warrant for the probationer's arrest was lodged as a detainer against him with Pennsylvania corrections officials. The probationer then asked New Jersey officials for a final disposition of the alleged probation violations, but New Jersey failed to make a determination of the alleged violations within 180 days after the probationer's request.

The probationer then filed a petition for habeas corpus relief in the United States District Court in Pennsylvania, seeking dismissal of the alleged probation violations on the ground that New Jersey had failed to comply with Article III of the Interstate Agreement on Detainers. The federal

court stayed action pending exhaustion of the probationer's state court remedies. The New Jersey state courts ultimately ruled that the probationer's Pennsylvania convictions constituted a probation violation, and ordered the probationer to serve the remaining time on his New Jersey convictions. The federal court thereupon granted the probationer's petition for writ of habeas corpus, vacated the probation revocation, and ordered the probationer released from state custody. On appeal by New Jersey authorities, the United States Court of Appeals for the Third Circuit affirmed, holding that "a probation violation is a 'complaint' within the meaning of Article III of the [Agreement]." *Nash v. Jeffes,* 739 F.2d 878, 884 (3d Cir.1984). The Supreme Court of the United States granted certiorari. 469 U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985).

The Supreme Court's opinion in *Carchman* painstakingly examines the language of the Interstate Agreement on Detainers, carefully reviews its legislative history, and concludes by stating: "Given the plain language of the Agreement and the relevant legislative history, we cannot conclude on the basis of the stated purposes of the Agreement alone that the parties to the Agreement intended Art. III to apply to probation-violation detainers." 473 U.S. at ——, 105 S.Ct. at 3411, 87 L.Ed.2d at 529. Accordingly, the Supreme Court reversed the decision of the United States Court of Appeals for the Third Circuit in *Nash v. Jeffes.*

■ *Carchman* is squarely in point with the instant case and is dispositive of relator's contention that the warrant lodged against him for the alleged violation of his probation was subject to Article III of the Interstate Agreement on Detainers. The pertinent portion of Article III of the Agreement involved in *Carchman*[1] is identical to the portion of Article III of the Agreement as adopted in Missouri, § 217.-490, RSMo Cum.Supp.1982, quoted *supra.* We consequently reject relator's argument that respondent is barred by Article III of

the Agreement from determining whether relator violated his probation as alleged in the 1982 violation report.

As a second theory in support of his petition, relator, with commendable ingenuity, hypothesizes that inasmuch as no appeal lies when the disposition in a criminal case is by suspended *imposition* of sentence, as there is no final judgment, *State v. Lynch,* 679 S.W.2d 858 (Mo. banc 1984), the probation violation report that triggered the detainer against him should be considered an "untried indictment, information or complaint" within the meaning of Article III of the Agreement.

■ We disagree. Relator's guilt of burglary in the second degree in the underlying case was formally established in 1982 when the Circuit Court of Webster County accepted relator's plea of guilty to that offense. There was, therefore, no *untried* indictment, information, or complaint pending against relator in the underlying case when he filed his request for disposition of the warrant in 1984. The warrant was issued because of the report alleging that relator had violated his probation, not because there was any unresolved issue of his guilt of the crime for which he had been placed on probation. Indeed, a finding of guilty of such crime was a condition precedent to the action of the Circuit Court in suspending the imposition of sentence and granting probation. § 557.011.2(3), RSMo 1978.

The preliminary order in prohibition is quashed.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.

---

1. *Carchman,* 473 U.S. at ——, n. 1, 105 S.Ct. at 3404, n. 1, 87 L.Ed.2d at 521, n. 1.