James STELLJES, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 59622.

Missouri Court of Appeals,
Western District,
Division Three.

March 29, 2002.

Rosalynn Koch, Columbia, for Appellant.

Richard A. Starnes, Assistant Attorney General, Jefferson City, for Respondent.

Before BRECKENRIDGE, P.J., NEWTON and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

James Stelljes appeals the denial of his 24.035 motion for post-conviction relief without an evidentiary hearing. Mr. Stelljes pleaded guilty to second degree burglary, § 569.170, RSMo 2000,[1] and the court sentenced him to three years imprisonment but suspended the sentence and placed him on probation for three years. Subsequently, Mr. Stelljes pleaded guilty to felony child abuse, § 568.060, and the court sentenced him to five years imprisonment but suspended the sentence and

---

1. All statutory references are to Revised Statutes of Missouri 2000, unless otherwise noted.

placed Mr. Stelljes on probation for five years. After the probationary periods expired, the trial court revoked Mr. Stelljes' probation in both cases. On appeal, Mr. Stelljes alleges that the trial court did not have jurisdiction to revoke his probations because his probationary periods had ended. This court finds that the trial court did not have jurisdiction to revoke Mr. Stelljes' probation with respect to the second degree burglary case. With respect to the felony child abuse case, this court finds that the State affirmatively manifested its intention to revoke Mr. Stelljes' probation and made a reasonable effort to hold a revocation hearing before the probationary period expired. Therefore, the trial court retained jurisdiction under § 559.036.6 to revoke his probation.

The judgment of the motion court is reversed and the cause remanded, in part, and the judgment is affirmed, in part.

### Factual and Procedural Background

On June 9, 1993, Mr. Stelljes pleaded guilty to second degree burglary in Macon County. The trial court sentenced him to three years imprisonment but suspended that sentence. The trial court then placed Mr. Stelljes on probation for three years. On February 9, 1994, Mr. Stelljes pleaded guilty to felony child abuse in Macon County. The trial court sentenced him to five years imprisonment but suspended that sentence, placing Mr. Stelljes on probation for five years.

On May 13, 1996, the Macon County Circuit Court entered an order for Mr. Stelljes to appear on June 26, 1996, to explain why he was not paying his court costs in both the burglary and child abuse cases. After Mr. Stelljes failed to appear, the court rescheduled that hearing on July 10, 1996. Mr. Stelljes again failed to appear and, on July 11, 1996, the Court issued a capias warrant in the burglary and child abuse cases. On July, 17, 1996, the Court suspended Mr. Stelljes' probations until he was in custody.

This capias warrant was not served on Mr. Stelljes until January 10, 1997, because sometime near the end of 1995 or the beginning of 1996, Mr. Stelljes moved to the state of Washington. While in Washington, Mr. Stelljes committed and was convicted of felony child molestation. A Washington state court sentenced Mr. Stelljes to 46.5 months imprisonment. On June 26, 1996, the State of Washington took custody of Mr. Stelljes. On January 16, 1997, a sheriff's deputy returned the capias warrant issued on July 11, 1996, indicating that the warrant was served "in the County of Yakima in state of Washington by fax" on January 10, 1997.

On February 5, 1998, the Macon County Circuit Clerk was authorized to send certified records of both cases to the State of Washington. On February 25, 1998, the trial court issued a new capias warrant in the burglary and child abuse cases. On February 27, 1998, the clerk mailed certified copies of docket sheets, the information/complaint and a certified copy of the capias warrant in the burglary case to the Washington State Reformatory. The docket sheet in the child abuse case does not contain any entries between February 5, 1998, and August 30, 1999. On August 30, 1999, the sheriff returned the capias warrant dated February 25, 1998, relating to both the burglary and child abuse cases, showing personal service on August 28, 1998. In September of 1999, Mr. Stelljes was released from prison in Washington. Subsequently, he waived extradition and returned to Missouri.

On September 29, 1999, Mr. Stelljes appeared in the Macon County Circuit Court and was referred to the public defender's office. On that same date, the State filed

a motion to revoke probation in both the burglary and the child abuse cases.

On October 13, 1999, the trial court held a probation revocation hearing. Mr. Stelljes testified at this hearing. The court revoked Mr. Stelljes' probation in both the second degree burglary case and the felony child abuse case. The trial court had two reasons for revoking Mr. Stelljes' probation. First, he was not paying his court costs. Second, Mr. Stelljes violated his probation by moving to Washington without permission, and, while in Washington, he pleaded guilty to a crime.

Mr. Stelljes filed a timely motion to vacate, set aside, or correct the judgments or sentences under Rule 24.035. Mr. Stelljes claimed that the trial court lacked jurisdiction to revoke his probations because his probationary periods had expired. There was no hearing on that motion, and the court issued findings of fact and conclusions of law denying Mr. Stelljes' motion. This appeal followed.

### Lack of Jurisdiction to Revoke Probation Cognizable under Rule 24.035

The State alleges that Mr. Stelljes' claims that the motion court lost jurisdiction to revoke his probations were not cognizable in a Rule 24.035 proceeding. The State contends that the sole remedy for a challenge to an order revoking probation is a writ of habeas corpus. In support of this proposition, the State cites *Teter v. State*, 893 S.W.2d 405 (Mo.App.1995), and *Wood v. State*, 853 S.W.2d 369 (Mo.App. 1993). Neither *Teter* nor *Wood* are factually similar to Mr. Stelljes' case, however. Both Mr. Teter and Mr. Wood were attempting to assert that they received ineffective assistance of counsel at a probation revocation hearing. *Teter*, 893 S.W.2d at 405–06; *Wood*, 853 S.W.2d at 370. In both of those cases, the court held that a Rule 24.035 proceeding was not the proper procedure to challenge the effectiveness of counsel at a probation revocation hearing. *Teter*, 893 S.W.2d at 406; *Wood*, 853 S.W.2d at 370.

A case that is more factually similar to the instant case is *Williams v. State*, 927 S.W.2d 903 (Mo.App.1996). In *Williams*, the court held that Rule 24.035 permits an attack on the jurisdiction of the court to order that a sentence be executed. *Id.* at 907 n. 4. The *Williams* court considered the merits of a claim that the trial court lacked jurisdiction to revoke probation because the probationary term ended. *Id.* at 906. Similarly, in *Wesbecher v. State*, 863 S.W.2d 2, 4–5 (Mo.App.1993), the court addressed the merits of a claim, brought pursuant to Rule 24.035, that the trial court lacked jurisdiction to revoke probation after the probationary period ended.

Here, Mr. Stelljes is challenging the trial court's jurisdiction to revoke his probation. He is alleging that the trial court lacked jurisdiction to execute his sentence because his probationary periods ended. Under the holdings of *Williams* and *Wesbecher*, Mr. Stelljes' claims could be properly brought in a Rule 24.035 proceeding.

### Escape Rule Does Not Apply to Post–Capture Errors

The State claims that, because Mr. Stelljes absconded to Washington before the expiration of his probationary terms, this court should utilize the escape rule to dismiss Mr. Stelljes' claims. The escape rule operates to deny a defendant the right to seek post-conviction relief. *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). The escape rule does not apply to post-capture errors, however. *Robinson v. State*, 854 S.W.2d 393, 396 (Mo. banc 1993). When the trial court's alleged revocation of probation does not occur until a defendant has been returned

to custody, the escape rule has been held to be inapplicable. *Wesbecher*, 863 S.W.2d at 5. Here, the trial court did not revoke Mr. Stelljes' probations until he was in custody in Missouri, so any alleged errors in the trial court's judgment revoking probation were post-capture errors. Therefore, following *Robinson* and *Wesbecher*, the escape rule does not apply.

## Standard of Review

In reviewing a denial of a motion for post-conviction relief, this court is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). Such a finding will be made only if, after a review of the entire record, the appellate court is left with a "definite and firm impression that a mistake has been made." *Id.*

## Probation on Burglary Conviction Ended Prior to Manifestation of Intent to Revoke

■ In his first point, Mr. Stelljes alleges that the trial court lacked jurisdiction to revoke his probation in the burglary case because his probationary term expired, and the term was not extended by operation of law.

■ Jurisdiction to revoke probation normally ends when the probationary period expires. *Williams*, 927 S.W.2d at 905. "A term of probation commences on the day it is imposed." Section 559.036.1. Here, the trial court imposed a term of three years probation in the burglary case on June 9, 1993. Therefore, the trial court would ordinarily have lost jurisdiction to revoke Mr. Stelljes' probation in the burglary case on June 9, 1996. Section 559.036.6 provides for the extension of the court's authority to revoke probation past the date probation expires, however, if certain actions are taken prior to the expiration date. Section 559.036.6 states:

> The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period.

Thus, there are two requirements that a trial court must meet to retain jurisdiction to revoke probation after the probationary period expires. First, there must have been an affirmative manifestation of an intent to revoke the probationer's probation. Second, every reasonable effort must be made to notify the probationer of the intent to revoke probation and to conduct a hearing prior to the expiration of the probationary period. *See State v. Roark*, 877 S.W.2d 678, 680 (Mo.App.1994) (first, determining that there was an affirmative manifestation to conduct a revocation hearing on probationer's probation and, second, determining that the court made every reasonable effort to hold a hearing before the probationary period expired).

This court has addressed the jurisdiction of a trial court to revoke probation after the probationary period expired. For example, in *State ex rel. Cline v. Wall*, 37 S.W.3d 877, 881–82 (Mo.App.2001), the court held that the trial court affirmatively manifested an intent to revoke the probationer's probation before the probationary period expired. The facts of *Cline* were that the court held two probation violation hearings, which the probationer attended, and set a third violation hearing, which the

probationer did not attend. After the probationer did not attend the third hearing, the court issued a capias warrant. All of these events occurred before the probationary period expired. *Id.* In holding that the trial court retained jurisdiction to revoke probation, the court reasoned, "setting hearings after the filing of violation reports, and issuing a capias warrant, all before the probationary period expired, constituted an affirmative manifestation of an intent to conduct a revocation hearing within the meaning of § 559.036.6." *Id.* at 882.

Likewise, in *Williams,* the court held that there was an affirmative manifestation of an intent to revoke probation. 927 S.W.2d at 906. In *Williams,* the probationer absconded, and the court suspended his probation and issued a capias warrant. *Id.* at 904. The court held that the issuance of the capias warrant and suspension of Mr. Williams' probation was sufficient to affirmatively manifest an intent to conduct a probation revocation hearing. *Id.* at 906.

Similarly, in *State ex rel. Connett v. Dickerson,* 833 S.W.2d 471, 474 (Mo.App. 1992), the court held that there was an affirmative manifestation of an intent to revoke probation. In *Connett,* the State filed three probation violations with the court, and upon receiving a fourth violation report, the court set a hearing, which was to take place before the probationary period ended. *Id.* The hearing was continued at the probationer's request. The appellate court stated, "[i]t is obvious that the court affirmatively manifested an intent to conduct a revocation hearing" within the probationary period. *Id.*

In contrast, the court in *Wesbecher* held that the trial court did not retain jurisdiction to revoke probation after the probationary period expired. 863 S.W.2d at 5. In *Wesbecher,* the defendant's probationary period expired on June 18, 1989, and the trial court revoked his probation on June 17, 1991. *Id.* at 3–4. The trial court did not begin revocation proceedings until April 16, 1990. *Id.* at 5. The appellate court held that, because the trial court did not initiate revocation proceedings prior to June 18, 1989, "any action taken by the trial court following that date is absolutely void." *Id.*

Here, Mr. Stelljes' probationary period, relating to the burglary case, expired on June 9, 1996. Prior to that date, on May 13, 1996, the court entered an order, requiring Mr. Stelljes to appear on June 26, 1996, to explain why he was not paying on costs. No other action was taken prior to June 9, 1996. The court did not issue a capias warrant until July 11, 1996, over a month after his probationary period ended. Simply ordering a probationer to appear to explain why he was not paying his court costs is not an affirmative manifestation of an intent to revoke probation. Therefore, the trial court did not have jurisdiction under § 559.036.6 to revoke Mr. Stelljes' probation in the burglary case. The motion court's findings of fact and conclusions of law were clearly erroneous. The motion court's denial of Mr. Stelljes' claim is reversed, and the cause is remanded with instructions to enter an order vacating the judgment revoking his probation and discharging Mr. Stelljes.

## Every Reasonable Effort Made to Notify and Hold Hearing on Revocation of Probation on Child Abuse Conviction

 In his second point, Mr. Stelljes contends that the act of suspending probation did not toll the probationary period, and that the court did not act timely to ensure that his probation on the child abuse conviction was revoked within the probationary period.

With respect to the child abuse claim, it is clear that that court affirmatively mani-

fested an intent to conduct a revocation hearing before Mr. Stelljes' probationary period expired. On February 9, 1994, the court placed Mr. Stelljes on probation for five years. Therefore, his probationary period was set to expire on February 9, 1999. On May 13, 1996, the court ordered Mr. Stelljes to appear and explain why he was not paying his costs. Mr. Stelljes failed to appear, and the court rescheduled the hearing for July 11, 1996. Once again, Mr. Stelljes failed to appear, and the court issued a capias warrant. On July 17, 1996, the court suspended Mr. Stelljes' probation. On January 16, 1997, the capias warrant was returned, but it showed service by fax. Mr. Stelljes was not taken into custody nor did he appear. Because the court learned that Mr. Stelljes was in prison in Washington, it authorized the clerk to send certified records to Washington. On February 25, 1998, the court issued a new capias warrant, which was served upon Mr. Stelljes on August 28, 1998. While he was in prison, a detainer was also issued for Mr. Stelljes. On October 13, 1999, the court held a hearing in which it revoked Mr. Stelljes' probation.

As discussed above, issuance of a capias warrant and suspension of probation are affirmative manifestations of an intent to conduct a probation revocation hearing. Therefore, by issuing a capias warrant and suspending probation, the court affirmatively manifested an intent to conduct a probation revocation hearing in Mr. Stelljes' child abuse case. The trial court met the first requirement to retain jurisdiction. Mr. Stelljes' claim that the trial court lacked jurisdiction to revoke his probation in the child abuse case, focuses on the second requirement, that every reasonable effort must be made to notify the proba-

tioner of the intent to revoke probation, and to conduct a hearing prior to the expiration of the probationary period. *See Roark*, 877 S.W.2d at 680. Here, the second capias warrant was personally served upon Mr. Stelljes on August 28, 1998, before his probationary period expired. Furthermore, the State had a detainer on Mr. Stelljes, while he was incarcerated. Therefore, every reasonable effort was made to notify Mr. Stelljes of the intent to hold a revocation hearing. In fact, Mr. Stelljes does not contest that he received notice of the revocation proceedings prior to the expiration of the term of his probation. He claims, instead, that no reasonable effort was made to hold a hearing before his probationary period expired.

In *Williams*, the court considered whether the trial court made a reasonable effort to hold a revocation hearing prior to the expiration of the probationary period. 927 S.W.2d at 906–07. The relevant facts in *Williams* were that the trial court placed Mr. Williams on five years probation on April 25, 1986. *Id.* at 904. On July 23, 1986, the trial court suspended Mr. Williams' probation and issued a capias warrant. *Id.* The trial court directed that the warrant not be entered in the National Crime Information Center (N.C.I.C.).[2] *Id.* Mr. Williams had absconded to California and was not apprehended until January 17, 1993. *Id.* On March 11, 1993, the trial court held a probation revocation hearing, in which it revoked Mr. Williams' probation. *Id.*

On appeal, Mr. Williams argued that, because the trial court did not enter the warrant into the N.C.I.C., it did not make every reasonable effort to notify him of the intent to revoke his probation and to hold a hearing. *Id.* at 906. The appellate court

**2.** "The [National Crime Information Center] N.C.I.C. is a system that provides law enforcement agencies nationwide access to informa-

tion on persons wanted for criminal offenses." *State v. Mallett,* 732 S.W.2d 527, 530 (Mo. banc 1987).

held that the trial court made every reasonable effort to notify Mr. Williams and to hold a revocation hearing before his probationary term ended. *Id.* at 906–07. The appellate court agreed with the motion court's finding that " 'there was no way for the court to hold a hearing until the defendant was apprehended.... [The trial judge] did all that he could do and that was [to] issue the capias warrant.' " *Id.* at 906–07 (quoting the motion court's findings).

In this case, unlike in *Williams,* Mr. Stelljes' whereabouts were known and he acknowledges that he received notice of the revocation proceedings. Mr. Stelljes claims only that the court did not make a reasonable effort to conduct a hearing before the expiration of his probationary term. He asserts that two capias warrants were served during his probationary period, yet, the trial court did not hold a revocation hearing until after the period expired.

█ Mr. Stelljes bears the burden of demonstrating that "the trial court did not make every reasonable effort to conduct the revocation hearing prior to expiration of the period of probation." *Roark,* 877 S.W.2d at 680. He does not meet this burden. Mr. Stelljes' incarceration in Washington required Mr. Stelljes to demonstrate that the trial court's failure to have him transferred to Missouri to hold a revocation hearing prior to the expiration date of his probation was the failure to make every reasonable effort. Mr. Stelljes did not argue to the trial court or present evidence of the nature of the process necessary to have him returned to Missouri while he was serving a Washington sentence. Contrary to his argument on appeal that the court could have held a hearing before his release from the Washington prison, Mr. Stelljes testified at the revocation hearing that if he had not waived extradition, the State could not have had him transferred to Missouri for the probation revocation proceedings.

In fact, in *State ex rel. Noble v. Barker,* 706 S.W.2d 76, 78–79 (Mo.App.1986), the Southern District noted that the United States Supreme Court held in *Carchman v. Nash,* 473 U.S. 716, 734, 105 S.Ct. 3401, 3411, 87 L.Ed.2d 516, 529 (1985), that the Interstate Agreement on Detainers was not intended to apply to probation-violation detainers. Since Mr. Stelljes did not address the issue of the availability of a procedure to transfer a Washington state prisoner to Missouri for a probation violation proceeding, and it was not briefed by either party in the trial court or on appeal, this court will not undertake a *sua sponte* analysis of the issue. It is Mr. Stelljes' burden to prove the trial court's lack of every reasonable effort to hold a hearing, and by failing to address the reasonableness of the procedure to return him to Missouri for a hearing, he fails to meet his burden.

Even assuming, *arguendo,* that a procedure exists to transfer a prisoner in Washington to Missouri for a probation revocation hearing, Mr. Stelljes does not demonstrate that waiting until he was released from custody in Washington was unreasonable. The United States Court of Appeals for the Ninth Circuit addressed a similar issue, although under federal law, of whether it was reasonable to wait until a defendant was released from state custody to revoke supervised release after the supervised release term expired in *U.S. v. Garrett,* 253 F.3d 443 (9th Cir.2001). On June 23, 1997, a United States District Court placed Mr. Garrett on two years supervised release, and his term expired on June 22, 1999. *Id.* at 445–46. On June 21, 1999, the district court issued a supervised release warrant. Seven days later, on June 28, 1999, Mr.

Garrett pleaded guilty to charges in a California state court. *Id.* at 445. He was sentenced to sixteen months imprisonment for the state charges. *Id.* In March of 2000, Mr. Garrett was released from state custody and immediately taken into federal custody. *Id.* On May 11, 2000, the district court revoked Mr. Garrett's supervised release. *Id.* at 445–46. Mr. Garrett claimed that the district court did not have jurisdiction to revoke his supervised release because the term had expired. *Id.*

Under federal law, "a district court can revoke a term of supervised release after that term has expired if: (1) a violation warrant or summons was issued before the term expired; and (2) the delay between the end of the term of supervised release and the district court's revocation order is 'reasonably necessary for the adjudication of matters arising before [the term's] expiration.'" *Id.* at 446 (quoting 18 U.S.C. 3583(i)). The *Garrett* court held that "once a defendant's supervised release term expires, a district court may, in accordance with § 3583(i), postpone the federal adjudication of matters arising before the expiration of that term until after the defendant is released from state custody." *Id.* at 450. The court reasoned that the federal government is not required to writ a defendant out of state custody to hold a supervised release revocation hearing. *Id.* "[R]equiring the federal government to writ a defendant out of state custody for a supervised release revocation hearing could prove extremely burdensome." *Id.*

Both 18 U.S.C. 3583(i) and § 559.036.6 include a reasonableness standard, even though they are stated in the opposite, so the *Garrett* case is instructive. Just as it was reasonable for the district court in *Garrett* to delay holding the supervised release revocation hearing until the defendant was released from state custody, it was reasonable for the trial court to wait until after Mr. Stelljes was released from custody in Washington and was available to appear at the probation revocation hearing. Therefore, Mr. Stelljes does not meet his burden of proving that the trial court failed to make every reasonable effort to conduct a hearing prior to the expiration of the term of his probation in the child abuse case. Accordingly, the motion court's findings of fact and conclusions of law were not clearly erroneous. This point is denied.

The motion court's judgment denying Mr. Stelljes post-conviction relief on his burglary conviction is reversed, and the cause is remanded for proceedings on that issue consistent with this opinion. The motion court's judgment denying Mr. Stelljes post-conviction relief on his child abuse conviction is affirmed.

All concur.