**STATE EX REL. Charles ZIMMERMAN, Relator,**

v.

**The Honorable David DOLAN, Respondent.**

No. SC 95619

Supreme Court of Missouri, **en banc.**

Opinion issued April 4, 2017

Zimmerman was represented by Amy E. Lowe of the public defender's office in St. Louis, (314) 340-7662.

The state was represented by Michael J. Spillane of the attorney general's office in Jefferson City, (573) 751-3321.

George W. Draper III, Judge

Charles Zimmerman (hereinafter, "Zimmerman") seeks a writ of prohibition to prevent the circuit court from taking any further action in his probation revocation proceeding, other than to dismiss it with prejudice, contending the circuit court lacks the authority to act under section 559.036.8, RSMo Supp. 2013.[1] This Court holds the circuit court abused its discretion and exceeded its authority in holding Zimmerman's probation revocation hearing because it failed to make every reasonable effort to conduct a hearing prior to the expiration of the probationary period. The preliminary writ in prohibition is made permanent, and the circuit court is directed to discharge Zimmerman from probation.

1. All statutory references are to RSMo Supp. 2013 unless otherwise indicated. While section 559.036 has been amended multiple times since Zimmerman was placed on probation, the relevant statutory language regarding revocation has not changed. Before the amendments, the relevant statutory language was contained in section 559.036.6. *See* section 559.036.6, RSMo 2000. It is now in section 559.036.8. For ease of reference, this Court cites section 559.036.8.

## Factual and Procedural History

In November 1996, Zimmerman was charged with first-degree robbery and armed criminal action for offenses that occurred in Mississippi County, Missouri. Zimmerman pleaded guilty to first-degree robbery and was sentenced to twenty years' imprisonment. The circuit court suspended the execution of Zimmerman's sentence and placed him on probation for a period of five years, commencing September 11, 1997.

Zimmerman violated the terms of his probation while residing in Indiana. In January 2000, the circuit court issued a capias warrant for Zimmerman's arrest. Zimmerman waived extradition and was transported from Indiana to Mississippi County for a probation revocation proceeding. On May 9, 2000, the circuit court revoked Zimmerman's probation, retained jurisdiction pursuant to section 559.115, and ordered him to serve 120 days of shock incarceration. After completing shock incarceration, the circuit court placed Zimmerman on a second term of five years' probation. The circuit court permitted Zimmerman to return to Indiana after receiving reporting instructions and upon signing "an agreement to the terms of an Order of Extradition" in favor of Missouri. Zimmerman's second term of probation commenced September 8, 2000.

In mid-September 2000, Zimmerman was charged in Indiana with armed robbery that resulted in the victim's death under a theory of accomplice liability. On January 16, 2003, a probation violation report was filed with the Mississippi County circuit court and recommended "delayed action." Zimmerman later pleaded guilty in Indiana to first-degree robbery and received a twenty-six year sentence. Zimmerman began serving the Indiana sentence in September 2003.

On June 4, 2003, a supplemental probation violation report was filed with the Mississippi County circuit court. The docket entry contained the notation: "Capias revocation." The circuit court issued a capias warrant for Zimmerman's arrest for a probation violation resulting from the Indiana conviction.

The docket entries next reflect that a probation violation hearing was scheduled for, and subsequently continued on, December 30, 2004. In January 2005, a probation violation hearing was scheduled and continued again with the notation: "(Need Writ)." On March 8, 2005, the cause was continued again, with the docket entry reflecting, "Cause passed for Writ." On March 9, 2005, the Mississippi County circuit clerk sent the circuit court an e-mail asking if Zimmerman's probation should be suspended because the term was set to expire September 7, 2005. The circuit court replied, "Yes." That same day, the circuit court issued an order suspending Zimmerman's probation.

On May 24, 2005, Zimmerman filed a *pro se* demand for a trial on his probation violation case. Zimmerman invoked the Interstate Agreement on Detainers, section 217.490, RSMo 2000 (hereinafter, "IAD"), and requested that the circuit court set the cause for a hearing. Zimmerman named the correctional facility where he was incarcerated in Indiana and the sentence he was serving. Zimmerman then requested a final disposition of the charges pending against him in Mississippi County and agreed to waive extradition. Zimmerman also requested counsel be appointed to assist him in resolving this matter. The circuit court took no action on any of Zimmerman's requests and did not appoint counsel.

In December 2005, Zimmerman filed a second *pro se* motion requesting the charges and detainer be dismissed with

prejudice for failure to comply with the IAD. Zimmerman repeated his allegations from the May 24, 2005 filing. The circuit court took no action on this motion. Zimmerman also sent a request for information regarding the active Mississippi County warrant to his caseworker in Indiana. The caseworker told Zimmerman she received a fax from the Mississippi County sheriff's department stating, "[Zimmerman] does have active warrant, however per [Jail Administrator], we will not extradite."

On November 28, 2006, Zimmerman sent another *pro se* letter to the circuit court. Zimmerman informed the circuit court where he was incarcerated in Indiana and the sentence he was serving. Zimmerman noted the active warrant on his case. Zimmerman alleged he contacted the Mississippi County circuit clerk's office and the prosecutor in an attempt to resolve the warrant. Zimmerman claimed the Indiana department of corrections tried to release him temporarily from custody to resolve this matter but was unsuccessful. Zimmerman once again invoked the IAD and requested that the proper paperwork be completed to extradite him to Missouri. Zimmerman again requested counsel be appointed to help him resolve this issue. Zimmerman attached all of his IAD paperwork from Indiana to the letter. The circuit court took no action on any of Zimmerman's requests and did not appoint counsel.

In April 2008, Zimmerman received communication from an Indiana department of corrections reentry specialist regarding the Mississippi County warrant. The reentry specialist told him, "I spoke to dispatch and was informed that the warrant is still active, but they will not extradite." This information was reaffirmed in May 2008, when a warrant status report indicated, "Per Sheriff's Department, still active but will not extradite."

The docket entries contain no further filings until March 1, 2011, when Zimmerman filed another *pro se* motion to dismiss the charges and remove the detainer due to Missouri's repeated failure to comply with the IAD. Zimmerman again listed where he was incarcerated in Indiana and the sentence he was serving. Zimmerman reviewed his prior filings with the circuit court. Zimmerman averred that Indiana department of corrections classification and reentry specialists contacted the prosecutor's office repeatedly about the Mississippi County warrant. Zimmerman contended the prosecutor's office indicated it would not extradite Zimmerman, but the warrant remained active.

On April 5, 2011, ostensibly in response to Zimmerman's motion, the circuit court ordered: "Prosecuting Attorney to prepare Writ for Sheriff's Department to pick up in Indiana. Sheriff's Office ordered to remove 'will not extradite' per notation." Despite the explicit circuit court order, the prosecuting attorney did not prepare a writ and the sheriff's department did not remove the "will not extradite" notation from its records.

Zimmerman remained in Indiana until he was released on parole for his Indiana conviction in January 2016, after serving thirteen years' imprisonment. On January 21, 2016, the public defender's office entered its appearance on Zimmerman's behalf in the probation revocation cause. On January 25, 2016, the Mississippi County sheriff's department served Zimmerman with the June 2003 capias warrant. Zimmerman then was brought back to Mississippi County. On February 8, 2016, a probation violation report was filed, outlining the Indiana conviction that triggered the probation violation. The circuit court

scheduled a probation violation hearing for March 8, 2016.

On March 7, 2016, Zimmerman filed a petition for writ of prohibition with the court of appeals to prevent the circuit court from holding the revocation hearing, which was denied. Zimmerman then filed a writ petition with this Court.

While this writ was pending, the circuit court held Zimmerman's probation revocation hearing because no stay was issued preventing the hearing. At the hearing, Mississippi County sheriff's department employees denied having placed the "will not extradite" notation in Zimmerman's records, claimed to have no knowledge of how it originated there and stated they were unaware of the circuit court's order to remove the notation. An Indiana extradition coordinator stated that, although Zimmerman's claim was not proper under the IAD, he regularly received "flat out writs" and released offenders into temporary custody with the requesting state to resolve these issues. The extradition coordinator testified that, in this case, he "would have probably scheduled a hearing to grant the writ, and have specifics placed on it where [Zimmerman] was housed.... [O]nce proceedings were done he would be returned to us." Zimmerman's probation officer recommended his probation be revoked due to the Indiana conviction. At the conclusion of the hearing, the circuit court held Zimmerman violated the terms of his probation and set sentencing for June 14, 2016.

On May 24, 2016, this Court issued a preliminary writ of prohibition, pursuant to its authority under article V, section 4 of the Missouri Constitution. This Court's preliminary writ of prohibition commanded the circuit court to take no further action in this matter, other than to show cause as to the reasons this writ should not issue, until ordered to do so by this Court.

## Standard of Review

■ This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, sec. 4. "A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). Writ relief lies when the circuit court " 'lacks the authority to conduct a probation revocation hearing after the term of probation has expired.' " *State ex rel. Amorine v. Parker*, 490 S.W.3d 372, 374 (Mo. banc 2016) (quoting *State ex rel. Dotson v. Holden*, 416 S.W.3d 821, 823 (Mo. App. S.D. 2013)).

## Probation Revocation Proceedings

Zimmerman argues a writ is appropriate because the circuit court exceeded its authority under section 559.036.8 in setting his case for a probation revocation hearing and finding he violated the terms of his probation. Zimmerman maintains the circuit court no longer had authority over him under section 559.036.8 because his probation terminated by operation of law years before the 2016 hearing. Zimmerman contends there was a known and readily available means to procure his presence for a hearing, the circuit court should have procured him, and a hearing should have been held within the time allowed by law. The state counters the circuit court acted appropriately in waiting to conduct the probation revocation hearing until after Zimmerman completed his Indiana sentence.

### *Intent to Revoke*

■ Section 559.036 "governs the duration of probation terms and the power of

a court to revoke a defendant's probation." *Strauser*, 416 S.W.3d at 801. "A term of probation commences on the day it is imposed." Section 559.036.1. Throughout the duration of a defendant's probationary term, the circuit court has the authority to revoke a term of probation if a defendant violates it. Sections 559.036.3; 559.036.5; and 559.036.8. Section 559.036.8 empowers the circuit court to revoke probation during the term of probation. However, the circuit court's authority to revoke probation ends when the probationary period expires. *Dotson*, 416 S.W.3d at 824. Once the probationary term expires, the circuit court retains no authority over a probationer, " 'for any purpose, whether to cite him [or her] for probation violations, revoke probation, or order execution of the sentence previously imposed.' " *State ex rel. Stimel v. White*, 373 S.W.3d 481, 485 (Mo. App. S.D. 2012) (quoting *Starry v. State*, 318 S.W.3d 780, 782 (Mo. App. W.D. 2010)).

Section 559.036.8 recognizes that not all probation revocation-related matters can be resolved during the probationary period. Hence, this section provides for the extension of the circuit court's authority over a probationer "for any further period which is reasonably necessary for the adjudication of matters arising before [the probationary period's] expiration." *Id.* However, the circuit court must show "some affirmative manifestation of an intent to conduct a revocation hearing ... prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period." *Id.*

■ Zimmerman's probation expired September 7, 2005. The circuit court issued a capias warrant for the probation revocation on June 3, 2003, and suspended Zimmerman's probation on March 9, 2005. The

issuance of a capias warrant and suspension of the probationary term are affirmative manifestations of the circuit court's intent to conduct a probation revocation hearing. *Dotson*, 416 S.W.3d at 824. Zimmerman does not dispute this finding. Zimmerman instead challenges whether the circuit court made every reasonable effort to conduct the probation revocation hearing prior to the expiration of the probationary period.

### Every Reasonable Effort

■■ Zimmerman bears the burden of demonstrating the circuit court failed to make every reasonable effort to conduct the probation revocation hearing prior to the expiration of the probationary period. *State v. Roark*, 877 S.W.2d 678, 680 (Mo. App. S.D. 1994). However, Zimmerman need not prove he suffered prejudice or an inordinate delay to be afforded relief. *See Strauser*, 416 S.W.3d at 803, n.4 (stating section 559.036.8 does not require a defendant to demonstrate prejudice); *Timberlake v. State*, 419 S.W.3d 224, 230 n.9 (Mo. App. S.D. 2014) (stating the length of the delay between the expiration of the probationary period and the actual hearing is not an issue). The state argues *Williams v. State*, 927 S.W.2d 903 (Mo. App. S.D. 1996), and *Stelljes v. State*, 72 S.W.3d 196 (Mo. App. W.D. 2002), control this Court's analysis of Zimmerman's claim. This Court disagrees.

In *Williams*, the probationer absconded three months into his term of probation. The circuit court suspended his probation and issued a capias warrant during the probationary period. The probationer was apprehended approximately seven years later, and a probation revocation hearing was held two months after he was apprehended. The circuit court revoked his probation, and the probationer appealed, arguing the circuit court lacked authority to

do so. *Williams*, 927 S.W.2d at 904-05. The appellate court affirmed, finding the circuit court met both statutory requirements. With respect to whether the circuit court made every reasonable effort to hold the hearing, the appeals court stated it was impossible to hold a hearing until the probationer was apprehended, and the circuit court did all it could do by issuing the capias warrant. *Id.* at 906-07. *Williams* is distinguishable from the instant case in that Zimmerman was not an absconder who needed to be located before the revocation hearing could occur. Zimmerman made his whereabouts known early and often throughout this proceeding in an effort to be brought back to Mississippi County to resolve the probation violation.

In *Stelljes*, the probationer violated his probation approximately two years into his five-year term. The circuit court issued a capias warrant and suspended his probation. The probationer could not be served with the warrant because he absconded to Washington and was incarcerated after committing a criminal offense there. After the probationer was released from prison in Washington, he waived extradition and was returned to Missouri for a hearing that was held beyond the probationary period. The circuit court revoked his probation, and the probationer appealed arguing, *inter alia*, the circuit court lacked authority to revoke his probation. *Stelljes*, 72 S.W.3d at 198-99. Relevant to this case, the appellate court affirmed the circuit court's judgment on this claim, finding the circuit court made every reasonable effort to hold the probation revocation hearing. The court explained the probationer failed to meet his burden because:

> [The probationer's] incarceration in Washington required [him] to demonstrate that the trial court's failure to have him transferred to Missouri to hold a revocation hearing prior to the expiration date of his probation was the failure

to make every reasonable effort. [The probationer] did not argue to the trial court or present evidence of the nature of the process necessary to have him returned to Missouri while he was serving a Washington sentence. Contrary to his argument on appeal that the court could have held a hearing before his release from the Washington prison, [the probationer] testified at the revocation hearing that if he had not waived extradition, the State could not have had him transferred to Missouri for the probation revocation proceedings. . . . Since [the probationer] did not address the issue of the availability of a procedure to transfer a Washington state prisoner to Missouri for a probation violation proceeding, and it was not briefed by either party in the trial court or on appeal, this court will not undertake a *sua sponte* analysis of the issue. It is [the probationer's] burden to prove the trial court's lack of every reasonable effort to hold a hearing, and by failing to address the reasonableness of the procedure to return him to Missouri for a hearing, he fails to meet his burden.

*Id.* at 203. The court stated that, even assuming, *arguendo*, a procedure existed to transfer the probationer from Washington to Missouri, the probationer did not demonstrate that waiting until he was released from custody in Washington was unreasonable. *Id.*

Although *Stelljes* addresses a probationer who was incarcerated in another state and had to wait until his out-of-state sentence was completed to dispose of his Missouri probation violation, this is where the similarities end. Zimmerman did not abscond while on probation. Zimmerman contacted the prosecuting attorney, the sheriff's department, and the circuit court repeatedly throughout the duration of his Indiana sentence to resolve this issue.

There is no indication the probationer in *Stelljes* sought disposition of his Missouri charges while incarcerated in Washington. Further, unlike *Stelljes*, Zimmerman placed ample evidence in the record that it was not onerous for the circuit court to transport him back to Missouri for the revocation hearing. Zimmerman presented testimony from an Indiana extradition specialist who said he regularly received these types of writs and would release custody temporarily to get them resolved. Finally, it is undisputed that the circuit court extradited Zimmerman from Indiana for his first probation revocation hearing in 2000.

The state argues this Court should adopt *Stelljes'* holding that, if a probation violator is serving an out-of-state sentence, it is reasonable for the circuit court to wait until the out-of-state sentence is complete and the probationer is returned to Missouri for a revocation hearing. In *Moody v. Daggett*, 429 U.S. 78, 89, 97 S.Ct. 274, 279-80, 50 L.Ed.2d 236 (1976), the United States Supreme Court discussed the reasonableness of waiting for a term of incarceration to be completed before making a determination about parole revocation in another jurisdiction:

> [I]n cases such as this, in which the parolee admits or has been convicted of any offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation. This is uniquely a 'prediction as to the ability of the individual to live in society without committing antisocial acts.' In making this prophecy, a parolee's institutional record can be perhaps one of the most significant factors. Forcing decision immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's most recent convictions, ... a deci-

sion to revoke parole would often be foreordained. Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate at the expiration of the parolee's intervening sentence.

*Id.* (internal citation omitted); *see also Carchman v. Nash*, 473 U.S. 716, 733, 105 S.Ct. 3401, 3410, 87 L.Ed.2d 516 (1985) (applying this same rule to probation revocation cases).

While *Moody* and *Carchman* state it may be appropriate to hold a revocation hearing after the completion of the out-of-state sentence, it does not mandate this procedure. Further, given the record before us, it is clear the circuit court was not merely waiting for Zimmerman to complete his Indiana sentence. Initially, this Court notes the circuit court was willing and able to extradite Zimmerman from Indiana to attend a probation revocation hearing, which occurred during Zimmerman's first revocation proceeding in 2000. As early as January 2005, the record demonstrates that the circuit court intended to hold a probation revocation before the end of Zimmerman's Indiana sentence, but a writ needed to be issued to bring him back to Missouri. The January 2005 docket entry states the probation revocation hearing was continued with the notation, "(Need Writ)." In March 2005, the docket entry states, "Cause passed for Writ." In April 2011, the circuit court again ordered that a writ be prepared to pick up Zimmerman in Indiana and that the "will not extradite" notation be removed. Each of these orders demonstrate the circuit court did not intend to wait until Zimmerman completed his Indiana sentence prior to holding a probation revocation hearing. This Court will not now excuse an eleven-year delay in holding a probation revocation hearing on

a speculative justification not borne out by the record.

Finally, the state next argues the circuit court did all it reasonably could do in this case because it issued the capias warrant, directed the prosecuting attorney to prepare a writ, and ordered the sheriff's department to remove the "will not extradite" notation. The state argues it is unreasonable to expect the circuit court to arrange personally for the return of out-of-state probation violators and that such a task is a matter for the executive branch.

Although not labeled as such in the docket sheets, the "writ" that the circuit court directed the prosecuting attorney to prepare is a writ of habeas corpus ad prosequendum. In Missouri, writs of habeas corpus ad prosequendum have long been a traditional means of securing the presence of prisoners located in another jurisdiction for the purposes of prosecuting the prisoner for some other offense. *State v. Branstetter*, 107 S.W.3d 465, 471 (Mo. App. W.D. 2003); *State ex rel. White v. Davis*, 174 S.W.3d 543, 550 n.2 (Mo. App. W.D. 2005). While typically this writ is prepared or drafted by the prosecuting attorney, it is issued by the circuit court. *Branstetter*, 107 S.W.3d at 474.

The circuit court's inherent authority to issue writs of habeas corpus ad prosequendum was affirmed in *State ex rel. Billings v. Rudolph*, 322 Mo. 1163, 17 S.W.2d 932 (Mo. banc 1929). In *Billings*, this Court explained, "If a circuit court issued such a writ ... it is equivalent to a warrant for an arrest. It should be executed as warrants are executed. Our courts have [the] power to issue all warrants which may be necessary in the exercise of their respective jurisdictions." *Id.* at 933. This holding was codified in section 476.070, RSMo 1939,

and remains today. Section 476.060, RSMo Supp. 2008, provides: "All courts shall have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law." *See also State v. Robinson*, 325 S.W.2d 465, 469 (Mo. 1959) (relying on *Billings* and section 476.070 to hold the circuit court properly issued the writ to transfer the defendant from St. Louis city to St. Louis County); *State v. Savage*, 461 S.W.2d 887, 890 (Mo. banc 1971) (holding the magistrate court had authority under section 476.070 to issue an appropriate writ to secure the attendance of the accused at a preliminary hearing).

In *Dotson*, the Southern District issued a permanent writ of prohibition to prevent the circuit court from holding a probation revocation hearing because the circuit court failed to make every reasonable effort to hold a hearing in that case. *Dotson*, 416 S.W.3d at 824. Central to the Southern District's holding was the finding that the circuit court and the state had knowledge of where the probationer was incarcerated and, therefore, the circuit court "could have set a probation revocation hearing in this matter and, by means of a writ of habeas corpus ad testificandum or ad prosequendum, could have secured [the probationer's] presence for such a hearing." *Id.* at 825. Hence, *Dotson* found the circuit court had the power to issue either a writ of habeas corpus ad testificandum or ad prosequendum to secure the probationer's presence for a hearing. *See also Timberlake*, 419 S.W.3d at 226 (stating the circuit court issued a writ of habeas corpus ad prosequendum and sent it to the sheriff's office for service to the probationer who was incarcerated).

■ Although the circuit court could have exercised its inherent authority to

issue a writ of habeas corpus ad prosequendum pursuant to section 476.070, the circuit court failed to articulate any reason on the record why it failed to rule on any of Zimmerman's requests for counsel,[2] his requests for prompt disposition of his claims under the IAD,[3] or why it failed to enforce its order directing the prosecuting attorney to prepare the writ and the sheriff's department to remove the "will not expedite" language. Even when Zimmerman argued immediately before the revocation hearing that the circuit court lacked authority to proceed, the circuit court merely asked if there was a stay issued due to the writ filing pending in this Court. When the circuit court was informed there was no stay, it proceeded. At no point in these proceedings has the circuit court ever set forth a single reason or explanation as to why it had authority to hold the hearing despite the almost eleven-year delay between the expiration of Zimmer-

man's probationary period and his revocation hearing.

## Conclusion

The facts and circumstances in this case demonstrate unequivocally that this Court should exercise its discretion to issue a writ of prohibition to remedy an excess of authority. The circuit court abused its discretion in overruling Zimmerman's motion to dismiss his probation revocation proceeding and holding a hearing because the circuit court failed to make every reasonable effort to conduct a hearing prior to the expiration of the probationary period. Therefore, the preliminary writ of prohibition is made permanent, and the circuit court is directed to discharge Zimmerman from probation.

Breckenridge, C.J., Stith and Russell, JJ., concur; Wilson, J., concurs in separate opinion filed; Fischer, J., concurs in opinion of Wilson, J.

---

2. Zimmerman maintains that, had the circuit court sustained any of his requests to appoint counsel, appointed counsel would have resolved this issue quickly. The state correctly argues that appointment of counsel is not required under the statute. Section 559.036.6 provides that if a probationer requests counsel to represent him or her during a revocation proceeding, "the judge shall determine whether counsel is necessary to protect the probationer's due process rights. If the judge determines counsel is not necessary, the judge shall state the grounds for the decision in the record." *See also Abel v. Wyrick*, 574 S.W.2d 411, 420 (Mo. banc 1978). The record clearly shows Zimmerman requested counsel in his May 24, 2005, and November 28, 2006, filings and arguably a third time in the December 2005 filing that repeated the May 24, 2005, requests. The circuit court made no rulings on these requests. Even assuming, *arguendo*, those requests were overruled, the circuit court failed to state the grounds for that decision on the record as required under section 559.036.6. Notably, the public defender entered an appearance on Zimmerman's behalf in January 2016, immediately prior to his

extradition to Mississippi County, thus evidencing the circuit court's belief that counsel was necessary to protect Zimmerman's rights in these proceedings.

3. The state argues the IAD does not entitle Zimmerman to relief. This Court agrees. Zimmerman worked tirelessly from Indiana in an effort to have his probation detainer resolved, invoking the IAD in making his request for disposition of the detainer lodged in Mississippi County. Yet Zimmerman now concedes the IAD does not apply to detainers based on probation violation charges. *Carchman*, 473 U.S. at 734, 105 S.Ct. 3401; *Stelljes*, 72 S.W.3d at 203. Nevertheless, these filings served to give the circuit court notice of Zimmerman's whereabouts and his desire to resolve the probation violation promptly. Although the IAD could not afford Zimmerman relief, in *Carchman*, the Supreme Court recognized a "prisoner may have a legitimate interest in obtaining prompt disposition of a probation-violation charge underlying a detainer," which includes "hope for the imposition of a concurrent sentence." *Carchman*, 473 U.S. at 733-34, 105 S.Ct. 3401.

Paul C. Wilson, Judge, concurring.

The majority opinion holds that Respondent failed to make every reasonable effort to conduct a hearing prior to the expiration of the probationary period. I concur but write separately to emphasize the unique set of facts on which this holding is based.

The majority opinion's analysis turns on section 559.036.8, RSMo Supp. 2013,[1] which provides:

> The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that *every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period.*

§ 559.036.8 (emphasis added).

As the language of this subsection makes clear, the touchstone of the analysis is reasonableness. To retain authority to revoke probation beyond the probationary term, the trial court is not required to take all *conceivable* steps to secure the defendant's presence, only reasonable steps. In particular, the trial court is not required to issue a writ of habeas corpus *ad testificandum* to a sheriff or other custodian located in another state in the mere hope that the official will comply and tender the defendant for transport to Missouri. *Cf. Carbo v. United States,* 364 U.S. 611, 621, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961) (noting that the similar writ of habeas corpus *ad prosequendum,* though not strictly enforceable

by the issuing court, is recognized as a matter of "comity ... necessary between sovereignties in the administration of criminal justice").

Here, however, the facts demonstrated the issuance of such a writ was reasonably likely to produce the defendant's presence. By all accounts, Indiana officials were ready and willing to temporarily release Mr. Zimmerman to the custody of the Missouri trial court for purposes of resolving his probation violation. Despite the Missouri sheriff's reticence to travel to Indiana to transport Mr. Zimmerman back for this purpose (a not inconsiderable burden but one that it had performed before and that was at least a possible result of giving the defendant permission to relocate to Indiana), the trial court recognized that it had authority to order the sheriff to do so. As a result, the issue in this case is not whether it was reasonable to issue the writ to Mr. Zimmerman's Indiana custodian but whether—having already decided to do so—it was reasonable for the trial court to fail to issue the writ merely because the prosecuting attorney never completed the paperwork.

The majority opinion holds it was not, and I concur. This case should not, however, be read as imposing a requirement that trial courts must issue a writ in every case in which a probationer is in out-of-state custody or lose authority to conduct a revocation hearing after the probation term expires. Such a requirement would be unreasonable in many, if not most, cases and cannot be inferred from section 559.036.8.

---

1. As noted in the margin of the majority opinion, this identical provision was previously found at section 559.036.6, RSMo. All subsequent citations will be to RSMo Supp. 2013.