### Andre R. KIRK, Movant–Appellant,

### v.

### STATE of Missouri, Respondent–Respondent.

### No. SD 31123.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 31, 2011.

Motion for Rehearing or Reconsideration
and
Transfer Denied Jan. 24, 2012.

Application for Transfer Denied
April 3, 2012.

record, is left with the definite and firm impression that a mistake has been made." *Id.* at 56–57. In addition, "[t]he motion court was free to believe or disbelieve any evidence, whether contradicted or undisputed." *Wagoner v. State,* 240 S.W.3d 159, 163 (Mo.App.2007). We defer to the motion court on matters of credibility. *Id.*; *see Byrd v. State,* 329 S.W.3d 718, 724 (Mo.App.2010).

Gary E. Brotherton, Columbia, MO, for Appellant.

John W. Grantham, Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Andre Kirk (Kirk) appeals from an order denying his motion to reopen his Rule 24.035 post-conviction proceeding on the ground of abandonment.[1] After conducting an evidentiary hearing, the motion court found that appointed counsel did not abandon Kirk. The motion court concluded that Kirk voluntarily waived his right to post-conviction relief and dismissed his Rule 24.035 motion because he faced the serious risk of having additional felony charges filed against him if he proceeded with his post-conviction claim. Because the motion court's findings and conclusions are not clearly erroneous, we affirm.

## I. Standard of Review

■ We review the ruling on a motion to reopen post-conviction proceedings to determine whether the motion court's findings and conclusions are clearly erroneous. *Gehrke v. State,* 280 S.W.3d 54, 56 (Mo. banc 2009). "A motion court's findings and conclusions are clearly erroneous only if the Court, after reviewing the entire

## II. Factual and Procedural Background

Kirk was originally charged with one count of first-degree murder arising from his involvement in the death of Michael Sutton (Victim). The complaint contained the following allegations.

On August 17, 1998, Kirk was at his home with Mark Rich (Rich), Jason Huber (Huber), and Arthur Scott Thompson (Thompson). There, they beat Victim and placed him in the trunk of Thompson's car. Kirk retrieved a knife from his kitchen, wiped off the blade, put it into a bag and gave it to Rich. Kirk told Rich to make sure that Victim was dead before Rich dumped the body. Victim, still alive, was taken to a bridge near Buffalo, Missouri, where he was removed from the trunk. Rich took the knife and cut Victim's throat; Huber stomped Victim's head. He was then thrown off of the bridge. The next day, Victim's body was found with injuries consistent with the above-described attacks. Huber, Thompson and Rich made statements to the police admitting their involvement as outlined above and implicating Kirk as having attacked Victim, provided the knife and instructed Rich to make sure Victim was dead before disposing of the body.

1. All references to rules are to Missouri Court Rules (2011). All references to statutes are to RSMo (2000).

In September 1998, Kirk was indicted by a grand jury and charged with one count of first-degree murder for acting in concert with another to deliberately cause Victim's death. The State gave notice that it intended to seek the death penalty. On November 1, 2000, Kirk and the State reached an agreement on a plea. Pursuant to that agreement, Kirk pled guilty to the newly filed, class A felony charge of assault in the first degree. *See* § 565.050.2. In exchange for the guilty plea, the State would recommend a sentence of 30 years imprisonment and dismiss the first-degree murder charge with prejudice.[2] The plea court accepted Kirk's guilty plea on the assault charge and sentenced him in accordance with the State's recommendation. Two days later, Kirk was delivered to the Department of Corrections.

On December 28, 2000, Kirk filed a timely *pro se* motion for post-conviction relief pursuant to Rule 24.035. Post-conviction counsel Stephen Harris (Harris) was appointed to represent Kirk. On January 5, 2001, Kirk personally executed a notarized "Waiver of Postconviction Action Pursuant to Rule 24.035." In relevant part, that document stated: "Comes now movant, Andre Kirk, and, after having been fully advised of his rights, dismisses his post-conviction action[.]" On January 9, 2001, Harris filed Kirk's waiver along with a document voluntarily dismissing the post-conviction proceeding. The latter document stated that it was "a voluntary decision on the part of movant after advice of the consequences of such dismissal by counsel."

In October 2010, Kirk filed a motion to reopen his post-conviction proceedings. The motion alleged that Kirk was abandoned by post-conviction counsel Harris because he did not meet the requirements of Rule 24.035(e) by either filing an amended motion on Kirk's behalf or a statement in lieu thereof.

In December 2010, the motion court conducted an evidentiary hearing at which Harris and Kirk testified. The following is a summary of the relevant portions of their testimony.

*Harris' Testimony*

On December 28, 2000, Harris was appointed to represent Kirk in his post-conviction proceeding. At that time, Harris had over ten years of experience as a public defender. After Harris' appointment, he spoke with the prosecutor in Polk County and Dallas County. They told Harris that, if Kirk pursued his claim for post-conviction relief on the assault conviction, the prosecutors would file all applicable felony charges that could be asserted against Kirk. These charges included kidnapping, felonious restraint and armed criminal action. The prosecutors intended to file those additional felony charges within a few days unless Kirk dismissed his post-conviction proceeding. Due to the short time frame given by the prosecutors, Harris knew that a decision needed to be made quickly. After talking to the two prosecutors, Harris had a lengthy telephone conversation with Kirk. Harris told Kirk that both prosecutors intended to file additional felony charges against Kirk if he pursued post-conviction relief on the assault conviction. Harris discussed the underlying facts of the case, Kirk's plea agreement and the risks and benefits of pursuing post-conviction relief. One possible outcome was that the assault conviction would be set aside and sent back for a new trial on that charge. Another possible outcome was that Kirk's post-conviction motion would be denied, and his 30–4 year

---

**2.** The authorized sentence for a class A felony is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment[.]" § 558.011.1(1).

sentence would be affirmed. In either event, however, Kirk knew that pursuing post-conviction relief would result in other serious felony charges, such as kidnapping and armed criminal action, being filed against him. Harris advised Kirk that dismissal would be in his best interest, but it was up to him to decide whether or not to pursue post-conviction relief. The next day, Kirk and Harris spoke again by telephone. Kirk said that he had decided to dismiss his post-conviction proceeding. Under such circumstances, it was Harris' normal practice to explain to the client that the voluntary waiver of post-conviction rights meant the client could not refile a post-conviction motion to challenge his or her conviction. Harris delivered a waiver form for Kirk, which Kirk signed. Harris filed the waiver form and a voluntary dismissal of the post-conviction proceeding. After Kirk's post-conviction action had been voluntarily dismissed, Harris took no further action.

### Kirk's Testimony

Kirk agreed to plead guilty to first-degree assault and receive a 30–year sentence if the State dismissed the first-degree murder charge with prejudice. After he was sentenced, he filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035. After the motion was filed, Kirk spoke to trial counsel Michelle Monahan by telephone. She told Kirk that the Polk County prosecutor intended to file additional charges against Kirk unless he dismissed his post-conviction motion within three days. After Harris was appointed to represent Kirk, they spoke by telephone two times. They discussed the facts of the underlying criminal case. They also discussed the fact that additional charges would be filed against Kirk if he pursued post-conviction relief. He thought about the matter, decided to dismiss his post-conviction proceeding and signed the waiver form. According to Kirk, he did not

understand that dismissing his post-conviction proceeding would bar him from refiling it at a later time.

After hearing the evidence, the motion court denied Kirk's motion to reopen his Rule 24.035 motion. The court found that: (1) both Kirk and Harris understood prosecutors would file more felony charges if Kirk challenged his sentence and judgment; and (2) with Harris' agreement and assistance, Kirk voluntarily dismissed his post-conviction proceeding. Once that occurred, the motion court concluded that Rule 24.035(e) imposed no further obligation upon Harris take any action. As the motion court explained:

> The Court finds that PCR counsel must not thwart a movant's desire to dismiss a Rule 24.035 motion for the sake of performing the requirements of Rule 24.035(e) especially when [doing] so potentially places one's client in peril of facing more felony charges and facing longer incarceration[,] each of which the client wants to avoid. To bind all appointed PCR attorneys to performance of their Rule 24.035(e) duties while their clients advise them to dismiss their motions flies in the face of an attorney's professional responsibilities to his client.

Accordingly, the motion court decided that Kirk failed to prove he was abandoned by Harris. This appeal followed.

### III. Discussion and Decision

In Kirk's single point, he asserts that the motion court clearly erred by overruling the motion to reopen the Rule 24.035 post-conviction proceeding. Kirk argues that he was abandoned because: (1) Harris did not perform the obligations imposed upon him by Rule 24.035(e); and (2) he failed to advise Kirk of the ramifications of dismissing his post-conviction proceeding. We find no merit in these arguments.

A motion court is authorized to consider a motion to reopen a post-convic-

tion proceeding "when it is alleged that a movant has been abandoned by his counsel." *Crenshaw v. State*, 266 S.W.3d 257, 259 (Mo. banc 2008); *see Gehrke v. State*, 280 S.W.3d 54, 57 n. 3 (Mo. banc 2009). The doctrine of abandonment is a "narrow exception" to the general rules of finality regarding post-conviction motions. *Gehrke*, 280 S.W.3d at 57. Our Supreme Court "has repeatedly held it will not expand the scope of abandonment to encompass perceived ineffectiveness of post-conviction counsel." *Barnett v. State*, 103 S.W.3d 765, 774 (Mo. banc 2003). Claims of ineffective assistance of post-conviction counsel are "categorically unreviewable." *Hutchison v. State*, 150 S.W.3d 292, 303 (Mo. banc 2004); *Gehrke*, 280 S.W.3d at 58.

In Missouri, there are only three recognized scenarios in which a court may find that a movant was abandoned by post-conviction counsel. These occur when: (1) post-conviction counsel takes no action with respect to filing an amended motion, and the record shows movant is deprived of a meaningful review of his claims; (2) post-conviction counsel is aware of the need to file an amended post-conviction relief motion and fails to do so in a timely manner; or (3) post-conviction counsel overtly acts to prevent the movant's timely filing of a post-conviction motion. *Gehrke*, 280 S.W.3d at 57; *see Luleff v. State*, 807 S.W.2d 495, 497–98 (Mo. banc 1991) (no action); *Sanders v. State*, 807 S.W.2d 493, 495 (Mo. banc 1991) (untimely action); *McFadden v. State*, 256 S.W.3d 103, 108–09 (Mo. banc 2008) (prevents movant's timely filing). If post-conviction counsel is found to have abandoned a movant, the proper remedy is to put the movant in the place where he or she would have been if the abandonment had not occurred. *Gehrke*, 280 S.W.3d at 57. "It is imperative for relief, however, that the movant in no way be responsible for the failure to comply with the requirements of either

Rule 24.035 or Rule 29.15." *Id.*; *Sanders*, 807 S.W.2d at 495.

Kirk argues that he was abandoned by Harris because he failed to fulfill the obligations imposed upon post-conviction counsel by Rule 24.035(e), which states:

Counsel shall ascertain whether sufficient facts supporting the claims are asserted in the motion and whether the movant has included all claims known to the movant as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all claims known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and claims. If counsel determines that no amended motion shall be filed, counsel shall file a statement setting out facts demonstrating what actions were taken to ensure that (1) all facts supporting the claims are asserted in the pro se motion and (2) all claims known to the movant are alleged in the pro se motion. The statement shall be presented to the movant prior to filing. The movant may file a reply to the statement not later than ten days after the statement is filed.

*Id.* The motion court found, however, that the reason Harris did not file an amended motion or statement in lieu thereof was because Kirk voluntarily waived his right to pursue post-conviction relief and dismissed that proceeding. That finding is supported by the evidence.

As our Supreme Court has held, "[i]t has been settled law in this state and many other states that '[a] movant can waive his right to seek post-conviction relief in return for a reduced sentence if the record clearly demonstrates that the movant was properly informed of his rights and that the waiver was made knowingly, voluntarily, and intelligently.'" *Cooper v. State*, 356 S.W.3d 148, 154 (Mo. banc 2011) (citation omitted; discussing waiver of a

Rule 24.035 motion). We agree with the motion court that, if a post-conviction proceeding is dismissed pursuant to a valid waiver, counsel has no further obligation to comply with the requirements of Rule 24.035(e). Thus, the dispositive issue here is whether the record demonstrates that Kirk knowingly, voluntarily and intelligently waived his right to pursue post-conviction relief.

 Our review of the record demonstrates that Kirk did knowingly, voluntarily and intelligently waive his right to post-conviction relief in order to prevent additional, serious felony charges from being filed against him. The testimony of both Harris and Kirk supports this conclusion. Harris testified that he discussed the benefits and risks of pursuing post-conviction relief with Kirk. A successful post-conviction proceeding would have resulted in Kirk's conviction for the class A felony of first-degree assault being set aside and remanded for a new trial. Upon remand, however, Kirk still faced a potential life sentence if convicted. § 565.050.2; § 558.011.1(1). An unsuccessful post-conviction proceeding would have resulted in his first-degree assault conviction and at-

tendant 30–year sentence being upheld. In either event, however, merely going forward with the post-conviction proceeding would have resulted in additional felony charges being filed against Kirk. These charges could have included armed criminal action, kidnapping and felonious restraint. All of these charges carry substantial criminal penalties, as well as the possibility of consecutive sentences being imposed upon conviction.[3] Kirk testified that he knew that these charges could be filed, and he was the one who decided to waive his right to post-conviction relief to avoid that outcome.[4] Thus, Kirk received a substantial benefit in exchange for his waiver of post-conviction relief. *See Krupp v. State*, 356 S.W.3d 142, 147 (Mo. banc 2011). The record before us amply supports the conclusion that Kirk knowingly, voluntarily and intelligently waived his right to post-conviction relief.[5]

In sum, the motion court correctly concluded that Harris did not abandon Kirk by failing to file an amended motion or statement in lieu thereof. By voluntarily dismissing the post-conviction proceeding, it was Kirk himself who relieved Harris of any further obligation to comply with Rule 24.035(e). *See Gehrke v. State*, 280 S.W.3d

---

**3.** Armed criminal action is an unclassified felony. § 571.015.1. A person convicted of this offense can be sentenced to serve life or an unlimited term of years in prison. *See State v. Freeman*, 702 S.W.2d 869, 874 (Mo. App.1985) (holding that life imprisonment is an authorized punishment); *State v. Stoer*, 862 S.W.2d 348, 354 (Mo.App.1993) (holding that a 100–year sentence is an authorized punishment). Depending upon the facts giving rise to the offense, kidnapping is either a class A or class B felony. § 565.110. A person convicted of this offense can be sentenced to life imprisonment (class A offense) or 15 years in prison (class B offense). § 558.011.1(1)–(2). Felonious restraint is a class C felony. § 565.120. A person convicted of this offense can be sentenced to serve seven years in prison. § 558.011.1(3). If Kirk were convicted of all three offenses, the terms of imprisonment could have been ordered to run consecutively

to each other and to any conviction for first-degree assault. *See* § 558.026.1.

**4.** Although Kirk argues that he did not understand "the ramifications of dismissing his case," Harris gave contrary testimony. The trial court clearly did not find Kirk's testimony on that issue credible, and we defer to that determination. *See Milner v. State*, 968 S.W.2d 229, 230–31 (Mo.App.1998) (recognizing that a motion court may find all, part or none of the movant's testimony credible).

**5.** Kirk argues that Harris could not provide adequate advice without reviewing the *pro se* motion, trial counsel's file, the plea transcript and the dismissal motion in the murder case. We disagree. Harris and Kirk both knew the prosecutors intended to file armed criminal action, kidnapping and felonious restraint

54, 57 (Mo. banc 2009); *Sanders v. State,* 807 S.W.2d 493, 495 (Mo. banc 1991). After reviewing the entire record, we are not left with a definite and firm belief that a mistake has been made. *Gehrke,* 280 S.W.3d at 56–57. Therefore, the motion court's decision to overrule Kirk's motion to reopen his post-conviction action is not clearly erroneous. *Id.* Kirk's point is denied. Accordingly, the motion court's order denying Kirk's motion to reopen is affirmed.

SCOTT, J., and FRANCIS, P.J., concur.

charges against Kirk if he pursued post-conviction relief. The dismissal of the murder charge would not prevent the filing of these additional, serious felony charges which carried severe criminal penalties. These additional felony charges would have been filed regardless of whether the outcome of the post-conviction proceeding was successful or not. It was this factor which prompted Harris to recommend dismissal and Kirk to decide to do so. Given the short time frame to make that decision and the fact that a successful outcome would not prevent the filing of these additional, serious felony charges, we find no merit in the assertion that Harris was obligated to review all of the aforementioned materials before he could intelligently advise Kirk about his options.