**Bradley J. JENNINGS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 31770.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 16, 2013.

Stuart Huffman, Springfield, for appellant.

Chris Koster, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

DANIEL E. SCOTT, P.J.

Jurors found Bradley Jennings guilty of murdering his wife. His direct appeal failed. *See State v. Jennings,* 322 S.W.3d 598 (Mo.App.2010), which describes the offense, investigation, and criminal proceedings.

Jennings moved for post-conviction relief, ultimately raising 97 complaints about his lawyer and the trial. The judge who handled the murder trial held an evidentiary hearing and denied the motion.

■ Jennings now appeals that judgment, raising six points. By rule,[1] we determine only whether the motion court's findings and conclusions are clearly erroneous. "Those findings are presumptively

correct; we defer to that court's credibility decisions; and we will reverse only if our review of the whole record firmly and definitely convinces us that a mistake was made." *Mayes v. State,* 349 S.W.3d 413, 416 (Mo.App.2011).

Applying these standards, we find no clear error and affirm the judgment.

### Ineffective Assistance— General Principles

■ To prove ineffective assistance of counsel (IAC), a movant must show that (1) counsel did not exercise customary skill and diligence of a reasonably competent attorney in similar circumstances, and (2) the movant was prejudiced thereby. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Counsel is not ineffective per *Strickland* unless representation was objectively unreasonable. It is strongly presumed that counsel acted within the wide range of reasonable professional assistance. The question is whether an attorney made errors so serious that he did not function as counsel guaranteed by the Sixth Amendment. *Harrington v. Richter,* ⸺ U.S. ⸺, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011).

■ To overcome *Strickland*'s high bar is never easy. *Id.* at 788. Courts are to apply *Strickland* with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the adversary process. *Id.* Thus, our scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel acted reasonably, and making every effort to eliminate distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time. *Keightley v. State,*

---

1. *See* Missouri Court Rule 29.15(k) (2012).

291 S.W.3d 367, 368 n. 1 (Mo.App.2009). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington,* 131 S.Ct. at 788 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

### Trial Counsel Complaints (Points I–IV)

Jennings' first four points are IAC claims against trial counsel Darrell Deputy. Deputy testified, at the PCR hearing, that he had tried some 25 murder cases and several hundred other cases. The defense theory at this trial was reasonable doubt, focusing on weaknesses in the state's case, especially gaps in the forensic evidence.

We will note Deputy's testimony further as we address these points, always recalling our deference to the motion court findings that Deputy's testimony was credible and his decisions were matters of sound trial strategy.

### Point I

■■■ Jennings complains that Deputy did not interview or call "people"—later identified in his argument as Dale Potter and Scott Rice—as trial witnesses. The motion court did not clearly err in rejecting this claim. The amended PCR motion did not cite a failure to call these men at trial.[2] Deputy credibly testified, and the motion court found, that Deputy interviewed them both. Point I fails.

### Point II

Jennings complains that Deputy did not take depositions. The motion court did not clearly err in finding that neither *Strickland* prong was proved on this claim.

**2.** Allegations or issues not raised in the Rule 29.15 motion are waived on appeal and are

■■■ As to the performance prong, Deputy testified that he had "voluminous" investigative reports and was "pretty comfortable" that he "knew what every witness was going to say" and what the state's proof would be. He chose not to depose the state's witnesses to avoid highlighting or alerting the state to weaknesses in its case. This was not rare for Deputy, even in major felony cases. Cost was not a factor in his decision. The record, as we must view it, supports the following motion court findings which are not clearly erroneous:

> Mr. Deputy testified he understands the value of depositions and has taken many before. He discussed the decision not to do any depositions with Movant. The decision not to take depositions was a matter of sound trial strategy. Mr. Deputy did not want to alert witnesses to weaknesses in their testimony by deposing them.

■■■ As to the prejudice prong, Jennings does not explain how any deposition might have changed the outcome. The motion court found, and we agree, that Jennings did not show what evidence might have been found by additional formal discovery, including depositions, or how it would have improved Jennings' trial position and provided Jennings a viable defense. We reject Point II.

### Point III

■■■ Jennings asserts that Deputy did not notify him of his right to testify at trial. The motion court did not clearly err in finding that this claim was not in the amended PCR motion, was not proved at the PCR hearing, and was refuted by this record made out of the jury's presence at the criminal trial:

not eligible for plain error review. *Cloyd v. State,* 302 S.W.3d 804, 807 (Mo.App.2010).

[DEPUTY]: Mr. Jennings, as your counsel, have I advised you that during the course of your criminal trial that you have the right to take the witness stand if you choose to do so?

[JENNINGS]: Yes.

[DEPUTY]: Did I ask you to consider whether or not you wanted to do that, and take whatever time you needed to take in order to consider that?

[JENNINGS]: Yes.

[DEPUTY]: In fact, you and I met last night and yesterday and this morning, is that correct?

[JENNINGS]: Yes.

THE COURT: Can you hear?

COURT REPORTER: Barely.

THE COURT: Go ahead, Darrell.

[DEPUTY]: And after these conversations, have you advised me of your decision of whether or not you wanted to testify?

[JENNINGS]: Yes.

[DEPUTY]: And what was the decision?

[JENNINGS]: Not to.

[DEPUTY]: Was that decision one that you made?

[JENNINGS]: Yes.

[DEPUTY]: And have you given some thought about what you should and should not do?

[JENNINGS]: Yes.

[DEPUTY]: Okay. And no one has coerced you into making that decision have they?

[JENNINGS]: No.

[DEPUTY]: Your Honor, I don't have any other questions.

THE COURT: All right. Mr. Zoellner, any other questions you want to ask on this?

[PROSECUTOR]: Were you informed that if you exercised your right not to testify you would have the opportunity—the Judge would instruct the jury that they could not hold that against you?

[JENNINGS]: Yes.

Point denied.

### Point IV

■ This seriously flawed point reads, verbatim, as follows:

THE TRIAL COURT CLEARLY ERRED IN FINDING THAT APPELLANT'S COUNSEL PROVIDED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT AT LEAST SIXTY TIMES DURING THE TRIAL AND SUCH STRATEGY WAS NOT REASONABLE AS IT ALLOWED THE JURY TO HEAR INADMISSIBLE EVIDENCE AND TESTIMONY WHICH IF OBJECTED TO WOULD HAVE BEEN SUSTAINED AND SUCH INADMISSIBLE EVIDENCE IF EXCLUDED WOULD REASONABLY HAVE AFFECTED THE OUTCOME OF THE TRIAL THEREFORE, THIS COURT SHOULD REVERSE THE VERDICT AND REMAND FOR A NEW TRIAL.

This point does not—for any of the alleged "at least sixty" instances—identify the testimony at issue, or the potential objection, or the legal reason why the trial judge would have had to sustain the objection, or how the result likely would have been different if the testimony had been excluded. We should dismiss the point, but given the gravity of the underlying charge, we will review *ex gratia* scattered complaints that we glean from the supporting argument.[3]

---

3. Deputy, who admitted that he had not objected at every possible opportunity, testified about his strategy, reasoning, and concern that excessive objections affect juror percep-

Jennings blames Deputy for not objecting to testimony about marital discord. Believing some such evidence "would come out regardless," Deputy chose not to draw attention to it, since it might be seen as a murder motive. Deputy expected Jennings to take the stand and counter such evidence, but Jennings did not testify when that time came.[4]

There was a similar failure in the defense strategy regarding forensic evidence, which Deputy saw as the "guts of the case." Rather than futilely objecting to the state's evidence, Deputy planned for the defense's retained expert to highlight inaccuracies and gaps therein. But after the state rested, according to the record before us, the defense learned that its retained expert had changed his opinion, thought Jennings was guilty, and would not testify.

 That Deputy's strategies did not succeed does not mean he was ineffective. Reasonable strategic choices, "no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Christeson v. State*, 131 S.W.3d 796, 799 (Mo. banc 2004). "It is all too tempting for a defendant to

second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We cannot say that Deputy's decisions not to object evinced incompetence under prevailing professional norms. *Harrington,* 131 S.Ct. at 778; *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

We deny Point IV and, thus, all of Jennings' points as to trial counsel.

### Abandonment by PCR Counsel (Points V & IV)

Jennings' last two points allege abandonment by his PCR counsel.[5]

#### *Point V*

Jennings alleges that the amended motion filed by PCR counsel was "so fatally defective that it amount[ed] to abandonment by counsel. . . ." We disagree.

 For PCR purposes, abandonment is narrowly construed. *Kirk v. State*, 360 S.W.3d 859, 864 (Mo.App.2011).

---

tion of a defendant and his counsel. The motion judge, who also had been the trial judge, found that these purposeful decisions were "a matter of sound trial strategy."

4. We quote Deputy's PCR testimony immediately after he explained that he "had anticipated Mr. Jennings was going to testify":

Q: And then when did it become clear to you that he was not going to testify?
A: Basically I think the morning, and I don't know if it was the third morning, or the fourth morning, I can't remember, but our case was getting ready to be presented. That's when I realized that he wasn't going to testify.
Q: And why did he ultimately not testify?
A: Um, I talked to him, I did not, after talking to him a little bit, I didn't think that

he was really in a position to do that. I didn't think that he could get through it.
Q: And was that—was that what he conveyed to you? That he didn't think he could get through it?
A: After I talked to him a little bit, I said are you—I said, you're not going to be able to do this, and he agreed with that.
Q: And had it initially been part of your trial strategy for him to testify?
A: If he would have testified he could have answered some of the questions that had been raised by the State, because he was there he could have explained his timeline.

5. Dee Wampler and Jason Coatney represented Jennings on direct appeal and in his PCR claim below. For convenience, we refer to them simply as "PCR counsel." Jennings has different counsel on this PCR appeal.

Our supreme court has repeatedly declined to stretch "abandonment" to include ineffectiveness of post-conviction counsel. *Id.* Indeed, IAC claims as to post-conviction counsel are categorically unreviewable. *Id.*

 Although Jennings "couches his claim in terms of abandonment, in essence, his theory of abandonment amounts to an ineffective assistance of PCR counsel claim." *Jensen v. State*, 396 S.W.3d 369, 377 (Mo.App.2013). Such a claim is categorically unreviewable in this court. *Id.,* at 377 & n. 6. In other words, Jennings "merely complains about the quality of [PCR] counsel's amended motion," which "does not raise an issue of abandonment for review." *Rasche v. State*, 231 S.W.3d 273, 274, 275 (Mo.App.2007). Point denied.

*Point VI*

Jennings urges that PCR counsel had "a direct conflict" because they also handled his direct appeal. Again, Jennings portrays this as abandonment. Again, we disagree.

 First, Jennings *chose* to have his private counsel on direct appeal also handle his PCR. Thus, any invited error should not justify relief, at least absent an actual conflict, not just a theoretical one. Seeming to recognize this, Jennings argues that there is an actual conflict when counsel acts contrary to a client's interest and to the advantage of a person with a conflicting interest, citing *State v. Taylor*, 1 S.W.3d 610 (Mo.App.1999). That may be true, but Jennings makes no such showing.

 Further, Jennings' only explicit complaint is that counsel did not raise as plain error, on direct appeal, Deputy's failure to object. *See* Point IV *supra*. Rarely, if ever, do we deem counsel ineffective for not raising plain error on appeal. *See, e.g., Hughes v. State*, 232 S.W.3d 596, 602 (Mo.App.2007). Jennings does not show why we should treat this case differently.

We reject Point VI and, thus, both claims of abandonment. PCR counsel, who filed an amended motion, trial brief, and proposed findings totaling over 100 pages, and called nine witnesses at the evidentiary hearing, did not abandon their client.

### Conclusion

Jennings has not shown that the motion court clearly erred or that any point on appeal has merit. We affirm the judgment denying post-conviction relief.

DON E. BURRELL, C.J., and MARY W. SHEFFIELD, J., concur.