PER CURIAM.
Relator seeks certiorari review of the record in Jennings v. Norman , Texas County Case No. 16TE-CC00470, wherein Respondent Judge Beger ("habeas court") issued a writ of habeas corpus in favor of Bradley Jennings, who was serving time for murdering his wife Lisa. We issued the writ as a matter of course and right. State ex rel. Hawley v. Heagney , 523 S.W.3d 447, 450 (Mo. banc 2017). After careful review and consideration, we find no error of law apparent on the face of the record and thus decline to quash the record of the habeas court.[1]
Background
Lisa Jennings died of a single gunshot wound in the couple's home in the early hours of Christmas Day 2006.[2] The marriage had been an unhappy one in recent years and Lisa planned to leave Jennings.
*510 In the hour preceding her death, an argument ensued during which Jennings accused her of seeing another man. According to Jennings, he then went out to his shop to have a beer and tinker around. He returned, stuffed Christmas stockings, and went to check on Lisa. He entered the master bedroom and saw her in the closet with a head wound. He moved her body, held her briefly, and then called 911.
Lisa had been shot in the head. Ballistics traced a nearby bullet to Jennings's revolver, which had been found under Lisa's leg. Other testing showed gunshot residue ("GSR") on Lisa's hands and none on Jennings's hands. Local officials (coroner, prosecutor, and sheriff's department) ultimately ruled the death a suicide.
Dissatisfied, a family member asked Highway Patrol investigator Daniel Nash to look into the case. Nash reviewed the evidence, reconstructed the crime scene, and opined that Lisa did not take her own life because the gun and Lisa's hand and arm did not exhibit blood and tissue "blowback" that would have been predicted had she pulled the trigger.[3]
Several months after Lisa's death, Nash obtained the bathrobe that Jennings had worn that night. Nash sent the robe to the Highway Patrol lab with a request for blood, DNA, and GSR testing. Nash also went to the lab and witnessed the blood and DNA testing, which yielded inculpatory evidence later used against Jennings at trial.
The lab's GSR test on the robe ("GSR test"), performed by a different criminalist, yielded facially exculpatory results. These were faxed to Nash's office, but never passed on to anyone-prosecution or defense-involved in the criminal proceedings against Jennings. At a jury trial where Nash was the State's key witness, Jennings was found guilty of killing Lisa and was sentenced to prison. He appealed, see Jennings , supra , and moved for post-conviction relief, see Jennings v. State , 406 S.W.3d 52 (Mo.App. 2013), but neither challenge was successful.
In 2015, Jennings's new counsel discovered the GSR test and negative results. Jennings petitioned for habeas corpus, charging in part that nondisclosure of the GSR test violated Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[4] The habeas court credited Jennings's evidence; concluded that Brady had been violated; and ordered that Jennings's convictions be vacated and he be released from custody "unless the Missouri Attorney General schedules [Jennings] for retrial within 120 days."[5]
Principles of Review
"A lower court's grant of habeas relief is reviewed by a writ of certiorari."
*511 Heagney , 523 S.W.3d at 450 (citing State ex rel. Nixon v. Sprick , 59 S.W.3d 515, 518 (Mo. banc 2001) ). Our supreme court describes certiorari review as "limited to determining whether the lower court acted beyond its authority in granting habeas relief, based solely on a review of the record." Id . The habeas court will have exceeded the bounds of its authority if the evidence as a whole does not support habeas corpus relief in light of applicable law. Sprick , 59 S.W.3d at 518.[6]
We review only questions of law apparent on the face of the record. Heagney , 523 S.W.3d at 450. Although we do not review questions of fact, the sufficiency of the evidence to support the writ is a legal issue subject to review. Sprick , 59 S.W.3d at 518. At the conclusion of our review, we are limited to either quashing or not quashing the lower court's record. Heagney , 523 S.W.3d at 450 ; Green , 388 S.W.3d at 605 n.3.
Discussion and Analysis
Claim Not Procedurally Defaulted
Missouri courts offer timely review of criminal convictions through direct appeal and post-conviction proceedings. State ex rel. Simmons v. White , 866 S.W.2d 443, 446 (Mo. banc 1993). "Neither these proceedings nor habeas corpus, however, was designed for duplicative and unending challenges to the finality of a judgment." Id. Thus, "[h]abeas review of a conviction is not appropriate where a defendant could have raised claims at trial, on direct appeal, or during post-conviction relief according to the state's procedural rules but did not do so for reasons internal to the defense." State ex rel. Strong v. Griffith , 462 S.W.3d 732, 738 (Mo. banc 2015). At a minimum, a habeas petitioner must show that the grounds for relief were not known to him while prior proceedings were available. White , 866 S.W.2d at 446.
Relator argues that Brady relief was procedurally barred because Jennings's defense team knew or should have known at trial that the robe had been GSR-tested. The following facts found by the habeas court, to which we defer,[7] undermine Relator's argument:
• The GSR test should have been disclosed to the defense in discovery, but it was not disclosed either pre-trial or post-trial.
• A Highway Patrol report produced to the defense and titled "Processing of Brad Jennings' Clothing" noted the presence of blood on the robe, but no reference was made to the GSR test and nothing in the report indicated that a GSR test had been performed.
• In closing argument and at the post-trial motion hearing, Jennings's trial counsel stated that the robe had not been tested for GSR.
• Jennings's new counsel initially discovered the GSR test in 2015. Counsel requested the results of all lab *512 tests, to which the State disclosed all results except the GSR test result for the robe, which was not disclosed until counsel made another specific request therefor.
• In testimony expressly credited by the habeas court, the State's lead counsel confirmed "that he was not aware of the exculpatory gunshot residue test and had he been he would have disclosed it because he is well aware of his obligation to do so."
The State's counsel also testified that he first learned of the GSR test in 2016 or 2017, and that events during the trial never brought that issue to his mind. Nash similarly testified that he was unaware of the GSR test or results until lawyers in the habeas case told him.
We find no basis to charge Jennings with scienter of state-ordered, state-conducted, and state-handled testing that was unknown to the prosecution team or its key trial witness who had sought such testing. Jennings's Brady claim was not procedurally barred.[8]
Brady Elements
As habeas petitioner, Jennings had the general burden to prove his right to relief. State ex rel. Koster v. McElwain , 340 S.W.3d 221, 256 (Mo.App. 2011).
To prevail in his Brady claims, [Relator] must satisfy three components: (1) The evidence at issue must be favorable to him, either because it is exculpatory or because it is impeaching of an adverse witness; (2) that evidence must have been suppressed by the State, whether willfully or inadvertently; and (3) he must have been prejudiced.
Woodworth , 396 S.W.3d at 338.
Relator argues that the GSR results were not exculpatory, but has expressly admitted they "would constitute impeachment evidence," which satisfies the first element.[9] Relator does not contest the second element.
The final element, prejudice, did not require Jennings to prove that GSR-test disclosure would have won his acquittal. State ex rel. Clemons v. Larkins , 475 S.W.3d 60, 82 (Mo. banc 2015). It was enough to show a reasonable probability of a different result; i.e. , that the evidentiary nondisclosure undermines confidence in the trial's outcome. The question is not whether Jennings " 'would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " Id. at 83 (quoting Kyles v. Whitley , 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), emphasis as in Clemons ).
Relator does not persuade us, based solely on a review of the record, that the habeas court acted beyond its authority in finding this third element. As the habeas court correctly noted, Nash was the State's key trial witness. His accuracy, veracity, and credibility were, by their very nature, material issues. See Taylor v. State , 262 S.W.3d 231, 244 (Mo. banc 2008). See also *513 State ex rel. Engel v. Dormire , 304 S.W.3d 120, 129 (Mo. banc 2010) (nondisclosure of impeachment evidence prejudicial per Brady ; witness was prosecution's key witness and defense hinged on undermining his credibility). Relator's non-prejudice arguments, save one otherwise moot,[10] all focus on minimizing the exculpatory aspects of the GSR test results. None addresses this evidence's materiality for impeachment , which Relator notably ignores even in its reply suggestions after mention by Respondents.
Conclusion
Jennings was not procedurally barred from raising the Brady claim on which the habeas court granted relief. The undisclosed test results undermine confidence in the trial's outcome. We thus decline to quash the habeas court's record and deny all motions still pending in this court.
To reiterate, our limited issue on certiorari "is not whether [Jennings] can be declared innocent based on the undisclosed evidence." Green , 388 S.W.3d at 632. Neither the granting of the habeas writ nor this court's decision not to quash the habeas record should be construed as any indication of Jennings's guilt or innocence. Id . at 632-33. That determination is solely left to a jury following a fair trial.

Strictly speaking, our opinion does not affirm the writ of habeas corpus as certiorari limits this court to either quashing or not quashing the lower court's record. State ex rel. Koster v. Green , 388 S.W.3d 603, 605 n.3 (Mo.App. 2012).

As occurred at the criminal trial and meaning no disrespect, we refer to Lisa Jennings hereafter by her first name. We take certain facts surrounding her death from our direct-appeal opinion in State v. Jennings , 322 S.W.3d 598 (Mo.App. 2010), without further attribution.

A forensic autopsy showed that the gun muzzle had been so near Lisa's head that barrel gasses ripped her scalp apart and left soot on her skull. Such wounds, per the pathologist, result in "blowback"-body and blood particles that fly back through the air onto the gun and hand holding it. Indeed, blood-spatter blowback covered nearly four feet of one wall, but no brain or skull matter was found on Lisa's right hand, and only one blood droplet.

No other claim in Jennings's petition was a basis for the habeas court's grant of relief.

At some point during the criminal proceedings, the Missouri Attorney General was appointed to take over the prosecution and lawyers from that office eventually tried the case. Testimony at the habeas hearing indicated that these lawyers' late entry into the case and non-involvement in the early investigation may have contributed to their not knowing that Nash earlier had ordered GSR testing of the robe.

Sprick and other earlier certiorari cases described habeas authority in terms of "jurisdiction," terminology rendered obsolete by J.C.W. ex rel. Webb v. Wyciskalla , 275 S.W.3d 249, 252-54 (Mo. banc 2009). Since J.C.W. and in light thereof, the Western District has applied an abuse-of-discretion standard in reviewing habeas writs by certiorari. See, e.g., State ex rel. Hawley v. Spear , No. WD81140, 544 S.W.3d 267, 269-70, 271-73, 2018 WL 501591, at *1, *3-4 (Mo.App. Jan. 23, 2018) ; Green , 388 S.W.3d at 607 ; State ex rel. Koster v. Jackson , 301 S.W.3d 586, 589 (Mo.App. 2010). We follow our supreme court's quoted Heagney language, but would reach the same result if we reviewed for abuse of discretion.

See State ex rel. Woodworth v. Denney , 396 S.W.3d 330, 333 (Mo. banc 2013).

We echo Ferguson v. Dormire , 413 S.W.3d 40, 71 (Mo.App. 2013) : "The State's admitted failure to ever, let alone timely, disclose this critical evidence renders particularly repugnant the State's argument that [Jennings] should have earlier discovered the undisclosed [evidence] in time to raise it on direct appeal or in his Rule 29.15 motion."

"If evidence is admissible for one purpose but improper for other purposes, it should be received, subject to limiting instruction, if requested." State v. Jones , 979 S.W.2d 171, 182 (Mo. banc 1998). See also McLaughlin v. State , 378 S.W.3d 328, 354 (Mo. banc 2012).

In reviewing the prejudice element, "we have not been required to consider 'newly discovered evidence' beyond the undisclosed evidence in the State's possession." Ferguson , 413 S.W.3d at 72. Thus we need not consider the State's extensive argument that the habeas court erred in so doing because Brady materiality should focus "only on evidence that existed in the trial record or evidence that was suppressed by the State" (to quote Relator) and not "all available evidence uncovered following the trial" as our supreme court stated in Woodworth , 396 S.W.3d at 338, and State ex rel. Griffin v. Denney , 347 S.W.3d 73, 77 (Mo. banc 2011).