

# In the Missouri Court of Appeals
# Eastern District

## WRIT DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI EX REL. ANDREW BAILEY, | ) | No. ED111501 |
| | ) | |
| Relator, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Cause No. 22SL-CC02389 |
| | ) | |
| THE HONORABLE BRUCE F. HILTON, | ) | |
| CIRCUIT JUDGE OF ST. LOUIS COUNTY, | ) | Honorable Bruce F. Hilton |
| AND JOAN M. GILMER, CIRCUIT CLERK, | ) | |
| ST. LOUIS COUNTY CIRCUIT COURT, | ) | |
| | ) | |
| Respondents. | ) | Filed: August 8, 2023 |

## I.    Introduction

This is an original proceeding in certiorari to review the issuance of a writ of habeas corpus by the St. Louis County Circuit Court, directing Antonio Tyler ("Tyler") be released from the custody of the Missouri Eastern Correctional Center.  The habeas court ordered Tyler released after finding the Scott County Circuit Court ("the probation court") lacked authority to revoke his probation after his probationary period expired.

We reverse the decision of the circuit court granting habeas corpus and quash the record in the circuit court.

## II.    Factual and Procedural Background

On February 1, 2011, Tyler pleaded guilty to first-degree domestic assault and the probation court sentenced him to ten years' imprisonment, suspended the execution of the sentence ("SES"), and placed him on five years of supervised probation, to expire on January 31, 2016.

During this probationary period, Tyler was cited several times for violating his probation. Tyler's probation officer cited him for violations in field reports filed on January 22, 2015, May 18, 2015, and October 8, 2015. Tyler also received a notice of citation on December 8, 2015. On November 5, 2015, the probation court summoned Tyler to appear on December 1, 2015, and show cause for the alleged probation violations. At the show-cause hearing, the probation court scheduled a hearing for January 19, 2016. Tyler's probationary period was scheduled to expire on January 31, 2016. At the January 19 hearing, the probation court suspended Tyler's probation and scheduled a probation violation hearing for March 1, 2016. Tyler failed to appear for the March 1 probation violation hearing and the probation court issued a capias warrant. Tyler was later arrested on the warrant and posted bond on June 21, 2016. He was scheduled to appear on July 12, 2016, at which time the court scheduled a new probation violation hearing for August 17, 2016. Tyler again failed to appear for his probation violation hearing and the probation court issued another warrant, which was served on Tyler on August 28, 2016. The probation court held a probation status hearing on August 31, 2016, and then scheduled a probation violation hearing for October 4, 2016. At the October 4, 2016, probation violation hearing, the probation court revoked Tyler's probation for violation of the reporting and directives condition of probation, sentenced him to the 120-day shock incarceration program pursuant to § 559.115,[1] and advised him of his rights to post-conviction relief pursuant to Rule 24.035.[2]

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.
[2] All rule references are to Missouri Supreme Court Rules (2023) unless otherwise indicated.

Tyler completed the shock incarceration program and was released on probation for a new five-year term commencing on January 10, 2017. Tyler continued to violate the terms of his probation after his release. On January 22, 2020, after a hearing, the probation court revoked Tyler's probation for a laws violation and ordered his ten-year sentence to be executed.[3]

On April 29, 2022, Tyler filed a petition for writ of habeas corpus in the Circuit Court of St. Louis County ("the habeas court"), seeking to vacate his sentence, terminate his probation and order him released. Tyler challenged the validity of his sentence, arguing that the probation court erroneously revoked his first term of probation after the probationary period had ended on January 31, 2016, and similarly, that the probation court erroneously revoked his probation due to violations that occurred after his probation had expired. The habeas court granted Tyler's petition on February 27, 2023. In its judgment, the habeas court simultaneously found that "Tyler's claims are procedurally barred and meritless" but the probation court "failed to manifest its intent to revoke Tyler's probation" and therefore, Tyler had been restrained unlawfully, requiring his release.

The State subsequently petitioned this court for a writ of certiorari, requesting we review and quash the record of the habeas court granting Tyler's writ of habeas corpus. The State argues the habeas court abused its discretion because Tyler's claims were procedurally barred and that the habeas court abused its discretion or exceeded its authority in finding the probation court lacked authority to revoke Tyler's probation. We issued a writ of certiorari on March 10, 2023, ordering certification and return to this Court a full copy of the record for our review. Thereafter, the Clerk of the St. Louis County Circuit Court filed the record with this Court.

---

[3] Although Tyler's probation continued until it was revoked on January 22, 2020, Tyler's petition for habeas corpus relief focused solely on the allegation that the probation court lacked authority to revoke his probation after January 31, 2016. Therefore, we need not detail the procedural history of the second five-year term of probation.

### III. Standard of Review

"Habeas corpus relief is the final judicial inquiry into the validity of a criminal conviction and functions to relieve defendants whose convictions violate fundamental fairness." *State ex rel. Clemons v. Larkins*, 475 S.W.3d 60, 76 (Mo. banc 2015) (citing *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 337 (Mo. banc 2013)). "[A] writ of habeas corpus may be issued when a person is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *Id.* (quoting *Woodworth*, 396 S.W.3d at 337) (alteration in original) (internal quotation marks omitted).

"A grant of a writ of habeas corpus in a lower court is reviewed by writ of certiorari." *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 518 (Mo. banc 2001) (citing *Missouri ex rel. Stewart v. Blair*, 208 S.W.2d 268, 277 (Mo. banc 1947)). Certiorari is available to challenge subject matter and territorial jurisdiction, as well as "to correct judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable by appeal." *Id.* We review the record to determine whether the habeas court acted within the bounds of its authority. *Id.* "The habeas court will have exceeded the bounds of its authority if the evidence as a whole does not support habeas corpus relief in light of applicable law." *State ex rel. Hawley v. Beger*, 549 S.W.3d 507, 511 (Mo. App. S.D. 2018) (citing *Sprick*, 59 S.W.3d at 518); *see also State ex rel. Koster v. McElwain*, 340 S.W.3d 221, 232 (Mo. App. W.D. 2011) ("[T]he sufficiency of the evidence to support the writ of habeas corpus as a whole is a question of law subject to certiorari review."). "A habeas petitioner has the burden of showing that the petitioner is entitled to habeas corpus relief." *Larkins*, 475 S.W.3d at 76.

## IV. Discussion

The habeas court granted relief on the basis that the probation court did not have statutory authority to revoke Tyler's probation because his probationary period had expired.[4] The habeas court found, through "minute entries and transcripts of proceedings," that Tyler successfully carried his burden of "showing that the [probation] court did not manifest its intent or that the [probation] [c]ourt failed to make every reasonable effort to conduct the revocation hearing," citing *State ex rel. Zimmerman v. Dolan*, 514 S.W.3d 603, 608 (Mo. banc 2017). The habeas court did not provide the parties with any other information clarifying how it came to this conclusion.[5]

In its first point, the State claims the circuit court abused its discretion in granting Tyler a writ of habeas corpus because Tyler was procedurally barred from pursuing habeas relief because he waived his claim by not raising it at the time of his probation revocation or in Rule 24.035 proceedings. In its second point, the State claims the circuit court abused its discretion or exceeded its authority in granting habeas relief because Tyler's claim for habeas relief was meritless in that the probation court properly retained authority to revoke Tyler's probation. We only address the State's second point, because even if waived, Tyler's claim has no merit and Point II is dispositive.

---

[4] The habeas court also made the following findings, "Tyler's claim is procedurally flawed because he failed to raise it during Rule 24.035 proceedings[,]" "Tyler's challenge to the probation Court's authority to revoke his probation is waived[,]" and "[b]ecause Tyler failed to raise his claim at the time of his probation revocation or in Rule 24.035 proceedings, he [was] barred from pursuing habeas relief."

[5] The habeas court specifically cited § 559.036.8 and the probation court's "fail[ure] to suspend Tyler's probation on *July 19, 2019*" (emphasis added), indicating the habeas court may have thought that the *second* term of probation had expired prior to revocation. If the habeas court did intend to find that the second term of probation had expired prior to the probation court's manifestation of intent to revoke probation, that finding is clearly erroneous. Tyler's second term of probation was scheduled to expire on January 9, 2022, two years *after* the probation court revoked his probation on January 22, 2020. Further, the July 19, 2019, date cited in the judgment does not coincide with any actions evidenced by the docket. Because this is clearly erroneous, we do not believe this is what the habeas court intended. It appears from the rest of the judgment, the briefing by the parties, and the evidence before the habeas court that the habeas court likely intended to state that the first term of probation had expired prior to the probation court's revocation of Tyler's probation. Therefore, we address this point as briefed by the parties and seemingly intended by the habeas court.

Section 559.036 governs the duration of probation terms and the power of a court to revoke a defendant's probation. The court's authority to revoke probation extends only through the duration of the probation term. § 559.036.2. "When the probation term ends, so does the court's authority to revoke probation." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). Section 559.036.8 allows the court to extend this authority "for any further period which is reasonably necessary for the adjudication of matters arising before [the probation period's] expiration" if the following two conditions are met: (1) "some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period" and (2) "every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period." "Unless both requirements are satisfied, the trial court loses the authority to revoke probation beyond the expiration of its term." *Miller v. State*, 558 S.W.3d 15, 20 (Mo. banc 2018). The probationer has the burden to demonstrate the probation court failed to meet these two requirements. *State ex rel. Jones v. Eighmy*, 572 S.W.3d 503, 506-07 (Mo. banc 2019).

A.      *Affirmative Manifestation of Intent*

The *scheduling* of a probation revocation hearing prior to the expiration of the probationary period is sufficient to demonstrate a probation court's affirmative manifestation of intent to conduct a revocation hearing. *State ex rel. Stimel v. White*, 373 S.W.3d 481, 485 (Mo. App. S.D. 2012) ("[T]here has to be something in addition to the docket entry such as the issuance of a warrant, the filing of a motion to revoke probation, *the scheduling of a revocation hearing* or some other similar affirmative manifestation of an intent to hold a revocation hearing[.]") (emphasis added); *Cline v. Teasdale*, 142 S.W.3d 215, 222 (Mo. App. W.D. 2004) (finding the plain meaning of § 559.036.6 "simply requires notice of an *intent* to conduct a revocation hearing prior to the expiration of the probationary period.") (emphasis added). In *Suber v. State*, 516 S.W.3d 386, 389

(Mo. App. E.D. 2017), this Court found that "the scheduling of [a movant's] revocation hearing prior to the end of [the movant's] probation term was sufficient to put him on notice of the court's intent to conduct a revocation hearing."

Here, the court affirmatively manifested its intent to hold a revocation hearing on January 19, 2016, when it suspended Tyler's probation and scheduled a probation violation hearing for March 1, 2016. The court's expression of intent in January occurred prior to Tyler's term of probation which was set to expire on January 31, 2016.

The habeas court summarily found that Tyler "presented sufficient facts through minute entries and transcripts of proceedings that in the opinion of this [c]ourt meet [his] burden…of showing that the [probation] court did not manifest its intent or that the [c]ourt failed to make every reasonable effort to conduct the revocation hearing." In his petition for habeas relief, Tyler points to his repeated parole violations in which the probation court took "no action at this time" to demonstrate that the probation court failed to manifest its intent to revoke his probation. Tyler also cites *Stelljes v. State*, 72 S.W.3d 196 (Mo. App. W.D. 2002), and *Stimel* to demonstrate that "[s]imply ordering a probationer to appear to explain why he was not paying his court costs is not an affirmative manifestation of an intent to revoke probation" and that there must be "something in addition to the docket entry such as the issuance of a warrant, the filing of a motion to revoke the probation, the scheduling of a revocation hearing or some other similar affirmative manifestation of an intent to hold a revocation hearing" for the probation court to retain authority to revoke probation after the probationary period expires. *Stelljes*, 72 S.W.3d at 201; *Stimel*, 373 S.W.3d at 485. Although this is an accurate statement of law, Tyler does not accurately represent the facts in this case. The record demonstrates that the probation court suspended Tyler's probation

*and* scheduled a probation revocation hearing within Tyler's probationary term, thereby meeting the threshold of demonstrating intent established by *Stelljes* and *Stimel*.

B.      *Every Reasonable Effort*

The plain meaning of § 559.036.8 simply requires the probation court make every "reasonable effort" to hold the revocation hearing before the probationary period expires. "To retain authority to revoke probation beyond the probationary term, the trial court is not required to take all *conceivable* steps to secure the defendant's presence, only reasonable steps." *Jones*, 572 S.W.3d at 509 (quoting *Zimmerman*, 514 S.W.3d at 613 (Wilson, J., concurring)) (internal quotation marks omitted). On January 19, 2016, the probation court scheduled the probation revocation hearing for March 1, 2016, one month after Tyler's probation period was to end on January 31, 2016. However, Tyler failed to appear for the March 1, 2016, hearing. "If the delay of the hearing is attributable to the probationer's actions… the court shall have been found to have made every reasonable effort to conduct the hearing within the probation term." § 559.036.8; *see also Miller*, 558 S.W.3d at 22 ("[I]t is 'axiomatic that a defendant may not take advantage of self-invited error or error of his own making.'") (quoting *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. banc 2017)). With this in mind, we consider whether the probation court made every "reasonable effort" to hold the revocation hearing before the probationary period expired.

The State argues that it is Tyler's burden to demonstrate that the probation court did not make every reasonable effort to hold the revocation hearing within his probationary period and that Tyler failed to do so. We agree. The probationer "bears the burden of demonstrating the [probation] court failed to make every reasonable effort to conduct the probation revocation hearing prior to the expiration of the probationary period." *Zimmerman*, 514 S.W.3d at 608. The January 19, 2016, hearing occurred less than two-weeks before Tyler's probationary term was to

8

expire. From the record, it is apparent that the probation court was working with Tyler regarding compliance with his probation, giving him multiple opportunities to comply with the terms of his probation.[6] Neither Tyler nor the record before us demonstrate that Tyler objected to the scheduling of the hearing after his probationary term would expire, nor does either indicate that the hearing could have been held earlier than March 1, 2016.

On January 19, 2016, the probation court manifested its intent to conduct a probation revocation hearing, suspended Tyler's probation, and scheduled the probation revocation less than two months out, which we find reasonable, due to the court's docket and other scheduling requirements. Tyler does not present any other *reasonable* efforts the probation court should have taken to ensure the probation revocation proceedings occurred within the week and a half between the probation court's manifestation of intent to revoke probation and the expiration of Tyler's probationary period.[7] The record as a whole does not support habeas relief. Therefore, we find

---

[6] Tyler notes that the January 19, 2016, hearing was a "show cause hearing" scheduled after the probation court reviewed a case summary report that indicated Tyler had not paid his court costs, including a "board bill" for housing at the county jail. It is not clear whether Tyler is implying that the probationary court revoked his probation because of his failure to pay because this was not a stand-alone argument raised. Instead, Tyler lumps this allegation into a footnote in a section arguing that the probation court failed to timely manifest its intent to conduct a revocation hearing. Tyler points out that the unpaid court costs noted in the case summary report included a board bill. Tyler then acknowledges that "[t]he taxation of the board bill is not at issue in this case" but continues by emphasizing "an unpaid board bill is not a proper basis for revocation of a defendant's probation." (citing *State v. Richey*, 569 S.W.3d 420, 425 (Mo. banc 2019)). While we agree that Tyler's failure to pay his board bill cannot provide the basis for the probation court revoking his probation, as Tyler notes, the board bill is not at issue in this case. Further, failure to pay other court costs, may still be considered in determining whether to revoke probation as long as it is not the sole basis for revocation, and if the probation court has determined the probationer has the ability to pay. *See Suber*, 516 S.W.3d 391 (affirming a probation court's revocation of a "[m]ovant's probation after the probationary term expired for associating with a convicted felon *in addition to failure to pay costs*, unlike the probationers in *Strauser* whose probation was suspended and ultimately revoked *solely for failure to pay restitution*) (emphasis added) (citing *Strauser*, 416 S.W.3d at 799); *see also State ex rel. Fleming v. Mo. Bd. of Prob. and Parole*, 515 S.W.3d 224, 233 (Mo. banc 2017) ("If the sentencing court subsequently seeks to revoke Mr. Fleming's probation for failing to pay his required court costs, it must conduct a hearing to determine whether Mr. Fleming had the ability to pay or whether he failed to make bona fide efforts to acquire the resources to pay his court costs."). We need not consider whether the probation court properly considered Tyler's ability to pay because this is also not at issue in this case. It is clear from the record that Tyler violated the terms of his probation on multiple occasions and the probation court identified Tyler's violations of "Reporting/Directives" as the basis for the first probation revocation, and "Laws" as the basis for the second revocation.

[7] In his petition for habeas relief, Tyler suggested the probation court could have issued an arrest warrant in response to the alleged probation violations, but failed to do so until after Tyler failed to appear at the March 1, 2016, hearing.

the habeas court acted outside the bounds of its jurisdiction. *Beger*, 549 S.W.3d at 511. An alternative ruling would encourage probation courts to *not* give probationers every opportunity to comply with the terms of their probation, perhaps revoking probation prematurely.

### V.    Conclusion

Accordingly, the decision of the habeas court granting habeas corpus is reversed and the record in the Circuit Court of St. Louis County, Cause No. 11SO-CR0004-01, is quashed.


_____
Kelly C. Broniec, Chief Judge

Michael E. Gardner, J. and
Thomas C. Clark II, J. concur.

---

In his brief, Tyler focuses on the fact that the probation court did not hold a revocation hearing in response to probation violations that occurred in January and May of 2015. This is not the law. The probation court manifested its intent to revoke Tyler's probation on January 19, 2016. The court was within its discretion to not revoke Tyler's probation based on the earlier violations, and then choosing to revoke after additional violation reports and the case summary report were filed on November 2, 2015. Thereafter, the probation court ordered a show cause hearing and subsequently a review hearing within Tyler's probationary term. Only after these hearings did the probation court manifest its intent to revoke Tyler's probation, well within its discretion. As the State notes, "Tyler faults the probation court for giving him additional opportunities to comply with the terms of probation, but there is no case or statute that requires probation courts to immediately move to revoke probation upon learning of violations."